UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DANIEL CHAVEZ

Plaintiff,

-against-

CITY OF NEW YORK, ERIC ADAMS,
DAVID CHOKSHI

Defendants

Case no: 1:23-cv-7754 (BMC)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
262 RXR Plaza, Suite #613
Uniondale, New York 11556
(631) 450-2468
claveglia@cjllaw.org

*Attorneys for Plaintiff*

## Table of Contents

**STATEMENT OF FACTS** .......... **1**

**ARGUMENT** .......... **4**

I. LEGAL STANDARD. .......... 4
II. THE COMPLAINT PLAUSIBLY ALLEGES A VIOLATION OF THE EQUAL PROTECTION CLAUSE .......... 5
*A. THE MANDATE VIOLATES THE EQUAL PROTECTION CLAUSE EVEN IF THE VACCINE STOPPED THE SPREAD OF COVID-19 AND ERIC ADAMS DID NOT EXEMPT PROFESSIONAL ATHLETES AND PERFORMERS.* .......... *5*
III. IT IS EVEN MORE PLAUSIBLE THAT THE MANDATE VIOLATED THE EQUAL PROTECTION CLAUSE SINCE THE VACCINE DID NOT STOP THE TRANSMISSION OF COVID-19, DEFENDANTS KNEW IT, AND ERIC ADAMS EXEMPTED PROFESSIONAL ATHLETES AND PERFORMERS. .......... 10
IV. THE CASELAW CITED BY THE DEFENSE IS INAPPOSITE. .......... 13
V. PLAINTIFF PLAUSIBLY ALLEGES THAT THE CITY FAILED TO ACCOMMODATE IN VIOLATION OF TITLE VII SINCE IT WHOLESALE DENIED THE POSSIBILITY OF ANY ACCOMMODATION AND FAILED TO EXPLAIN WHY. .......... 13
VI. THE MANDATE VIOLATED MR. CHAVEZ'S SUBSTANTIVE DUE PROCESS RIGHTS AS APPLIED. .......... 15

**CONCLUSION** .......... **18**

Cases

Arista Records, LLC v. Doe 3, 604 F.3d 110, [2d Cir. 2010] .......... 5
Ashcroft v Iqbal, 556 U.S. 662, [2009]. .......... 4
Baker v. The Home Depot, 445 F.3d 541 [2d Cir. 2006] .......... 14
Bell Atl. Corp. v. Twombly, 550 U.S. 544, [2007], .......... 5
Bronx Household of Faith v. Board of Educ. Of City of New York, 331 F.3d 342 [2d Cir. 2003] .......... 13
C.F. v. New York City Dep't of Health & Mental Hygiene, 191 A.D.3d 52 [2d Dept. 2020] .......... 7
Chavis v Wal-Mart Stores, Inc., 265 F Supp 3d 391, [S.D.N.Y. 2017] .......... 14
Clubside, Inc. v. Valentin, 468 F.3d 144, 159 [2d Cir.2006] .......... 6
Dorce v. City of New York, 608 F.Supp.3d 118 [S.D.N.Y. 2022] .......... 8
FSK Drug Corp. v. Perales, 960 F.2d 6 [2d Cir. 1992] .......... 5
FSK Drug Corp. v. Perales, 960 F.2d 6, [2d Cir. 1992]) .......... 10
Garvey et al., v. City of New York et al., 77 Misc.3d 585 [Richmond Cty. Sup Ct. 2022] .......... 10
Graham v. Long Island R.R., 230 F.3d 34, 40 [2d Cir. 2000] .......... 7
Groff v DeJoy, 600 US 447, 473, [2023] .......... 14, 15
Hernandez v. Robles, 7 N.Y.3d 338 [2006] .......... 10
Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019] .......... 6
Immaculate Heart Central School v. The New York State High School Athletic Association, 797 F.Supp.2d 204 [N.D.N.Y. 2011] .......... 6
Jacobson v. Massachusetts, 197 U. S. 11 [1905] .......... 7, 17
Kane v. DeBlasio, 19 F.4th 152 [2d Cir. 2021], .......... 10

Keles v. Davalos, 642 F.Supp.3d 339 [E.D.N.Y. 2022]. .......... 7
Kuiken v. County of Hamilton, 6:22-CV-1157, 2023 WL 2984420, [NDNY Apr. 18, 2023] .......... 8
Lynch v. City of New York et al., 952 F.3d 67,[2d Cir. 2018] .......... 4
Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33 [E.D.N.Y. 2021].. 13, 16, 17
Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, [2d Cir. 2011] .. 4
McDonald v. Vill. of Winnetka, 371 F.3d 992 [7th Cir. 2004] .......... 6
McMinn v. Town of Oyster Bay, 66 N.Y.2d 544, 549 [1985] .......... 9
Neitzke v. Williams, 490 U.S. 319, [1989]. .......... 5
NFIB v. OSHA 595 U.S. ____ [2022] .......... 6
Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 [2d Cir. 1985]. .......... 14
Singleton v. Cecil, 176 F.3d 419, [8th Cir. 1999 .......... 15
Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, [2d Cir. 2015] .......... 4
Villiage of Willowbrook v. Olech, 528 U.S. 562 [2000] .......... 11
Zahra v. Town of Southold, 48 F.3d 674, [2d Cir. 1995] .......... 5, 7

Statutes

Fed. R. Civ. P. 12(b)(6) .......... 15
Title VII .......... 18, 19

## STATEMENT OF FACTS

Mr. Chavez was employed by Defendant New York City (City or NYC) as the Assistant Commissioner of the NYC Department of Corrections' (NYCDOC) Training and Developmental Division (Compl. ¶ 8) [1]. In March 2020, SARS-CoV-2, the virus (Virus) responsible for causing COVID-19 reached the United States of America (Compl. ¶ 9). Mr. Chavez worked at Rikers Island throughout the height of the pandemic (Compl ¶¶ 8-18). Undoubtedly, COVID-19 was a significant threat to the public health in 2020 (Compl. ¶10). By March 2021, far less people died from the Virus (Compl. ¶¶19, 24).

After the Governor of New York State ended the declared state of disaster emergency and the Virus had mutated so many times that it caused symptoms similar to the flu, then Commissioner of the NYC Department of Health and Mental Hygiene David Chokshi ordered Plaintiff—along with all City employees—be vaccinated against COVID-19 (Mandate or Vaccine Mandate) (Compl. ¶¶ 38-40). The Mandate allowed employees to apply for religious and medical accommodations (Compl. ¶45). The Mandate did not apply to anyone else but City Employees like Plaintiff (Compl. ¶46). The purpose of the Mandate was to prevent transmission of the Virus (Compl. ¶47). It was never to prevent or ameliorate serious illness. The Mandate prohibited Plaintiff from going to his workplace unless he complied (Compl. ¶38).

[1] "Compl" is a reference to the complaint.

COVID-19 was a threat that was present everywhere people gathered in public (Compl. ¶60). It was not specific to the workplace (Compl. ¶¶61-62). Yet, unvaccinated members of the public had a choice whether to get vaccinated without penalty, but unvaccinated members of the public employed by the City had no choice (Compl. ¶172). Unvaccinated Plaintiff had no choice simply because he was employed by the City *id.* The City terminated unvaccinated members of the public—like Plaintiff—for not getting vaccinated *id.* The rational behind compulsory vaccination rest in the scientific principle of herd immunity (Compl. ¶89). It posits, that when a large enough percentage of the population is vaccinated against a disease, the disease is unable to spread amongst the rest of the population (Compl. ¶¶ 90-93). According to the CDC over 85% of residents in the City were fully vaccinated by April 2022 (Compl. ¶92). Even if every City Employee were vaccinated, it still would not achieve herd immunity (Compl. ¶98). Thus, there is no rational for mandating compulsory vaccination amongst City Workers like Plaintiff. This, of course, assumes that the vaccination actually stopped the transmission of the Virus. But it did not.

As alleged *ad nauseum,* the vaccine did not stop the transmission of the Virus or its variants (Compl. ¶¶ 65-88). When a vaccine stops the transmission of a virus there are no breakthrough cases nor the necessity for frequent, multiple boosters *id.* Further, the company that manufactured the vaccine acknowledged that it did not stop the Virus from spreading (Compl. ¶78). Finally, a study conducted by Pfizer itself concluded that no vaccine stopped the transmission of the beta variant—the first

mutation of the Virus (Compl. ¶87). That study was published in 2020 *id.* Adams and Chokshi knew that the vaccine did not stop Virus from spreading (Compl. ¶ 174).

On December 13, 2021, Chokshi mandate employees in the private sector get vaccinated (Compl. ¶118). The penalty for non-compliance was a fine (Compl. ¶ 121). Eric Adams did not enforce the Mandate against private sector workers (Compl. ¶¶ 119-122). Because the Mandate was never about public health. Eric Adams' made that very clear.

On March 24, 2022, Adams issued amended the Mandate to exclude professional athletes, performers, and their entourages (Compl. ¶¶ 124-125). His justification was essentially that professional athletes and performers generate more revenue for the City and exempting them would level the playing field against opponents with unvaccinated players (Compl. ¶ 126). Adams did not even attempt to provide a rational related to public health (Compl. ¶ 128). There is none. Still, Adams continued to enforce the Mandate against Plaintiff (Compl. ¶ 146).

Mr. Chavez applied for a religious accommodation (Compl. ¶ 99). His request was denied, and he appealed (Compl. ¶ 100). The City did not question the sincerity of his religious beliefs (Compl. ¶ 101). While the City claimed an accommodation would cause an undue hardship, Mr. Chavez appealed to the City of New York's Reasonable Accommodation Appeals Panel (Panel) (Compl. ¶110). The City did not consider any accommodation whatsoever (Compl. ¶106). The Panel simply denied Mr. Chavez's appeal because he "did not meet criteria." (Compl. ¶111). The Panel never explained what that means or what, if anything, it considered *id.* The City terminated Mr.

Chavez for failing to comply with the Mandate on June 30, 2022, or alternatively, on February 11, 2022 (Compl. ¶114-115).

## ARGUMENT

### I. LEGAL STANDARD.

It is beyond well settled that in deciding a Rule 12 (b) (6) motion to dismiss this Court is bound to accept all factual allegations in the complaint as true. Ashcroft v Iqbal, 556 U.S. 662, 678 [2009]. Furthermore, this Court's "task is to assess the *legal feasibility of the complaint; it is not to assess the weight of evidence that might be offered by either side*: Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." Lynch v. City of New York et al., 952 F.3d 67, 75 [2d Cir. 2018] (emphasis added). "The choice between or among plausible inferences or scenarios is one for the fact finder. . .. [it] is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id.* As far as plausibility, the Court must at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decision-making." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 [2d Cir. 2015]. [2]

To survive a motion to dismiss, the complaint "need not contain 'detailed factual allegations[.]'" Matson v. Bd. of Educ. of City Sch. Dist. of New York, 631 F.3d 57, 63 [2d Cir. 2011] (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 [2009]). While the plaintiffs must plead factual allegations that "raise a right to relief above the

[2] The possibility of unconscious bias is very present regarding COVID-19 since everyone experienced it and experiences diverge amongst individuals.

speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, [2007], the law demands "only enough facts to state a claim to relief that is plausible on its face." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 [2d Cir. 2010]. A complaint is sufficient so long as a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" Twombly, 550 U.S. at 556, (internal quotation marks omitted). Further, a court cannot dismiss a complaint "based on the judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327 [1989].

## II. THE COMPLAINT PLAUSIBLY ALLEGES A VIOLATION OF THE EQUAL PROTECTION CLAUSE.

### A. THE MANDATE VIOLATES THE EQUAL PROTECTION CLAUSE EVEN IF THE VACCINE STOPPED THE SPREAD OF COVID-19 AND ERIC ADAMS DID NOT EXEMPT PROFESSIONAL ATHLETES AND PERFORMERS.

At the pleading stage, Plaintiff must set forth facts that plausibly show "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Zahra v. Town of Southold, 48 F.3d 674, 683 [2d Cir. 1995] (quoting FSK Drug Corp. v. Perales, 960 F.2d 6, 10 [2d Cir. 1992]).

A plaintiff establishes that individuals are similarly situated where the Court can infer that they bear a "reasonably close resemblance." Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019]. Immaculate Heart Central School v. The New York State High School Athletic Association, 797 F.Supp.2d 204 [N.D.N.Y. 2011]. "There is no precise formula to determine whether an individual is similarly situated to comparators." McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 [7th Cir. 2004]. "[w]hether parties are similarly situated is [generally] a fact-intensive inquiry" depending on the particular context of the case. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 [2d Cir.2006]. Indeed, whether Plaintiff is similarly situated with comparators is generally a question of fact, rather than a question of law to "be resolved on a motion to dismiss." Hu v. City of New York, 927 F.3d 81 [2d Cir. 2019].

As far as plausibility goes, Plaintiff passes the threshold. Mr. Chavez was similarly situated in all material respects to every other unvaccinated person living or working in the City. COVID-19 was a threat present everywhere people in public gathered *see* NFIB v. OSHA 595 U.S. ____,____ 6-7 [2022] (per curium) (stating "[a]lthough COVID– 19 is a risk that occurs in many workplaces, it is not an occupational hazard in most. COVID–19 can and does spread at home, in schools, during sporting events, and everywhere else that people gather. That kind of universal risk is no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases"). COVID-19 was a threat present everywhere people gathered in public because any unvaccinated human being could become infected and transmit the Virus to another person (Compl. ¶ 60). Plaintiff is

an unvaccinated human being who lived in the City. Thus, Plaintiff is similarly situated in all material respects with every other unvaccinated person living or working in the City. Keles v. Davalos, 642 F.Supp.3d 339, 367 [E.D.N.Y. 2022]. Accordingly, Defendants claim that Plaintiff was not similarly situated to every other unvaccinated person living or working in the City fails. *See also* Graham v. Long Island R.R., 230 F.3d 34, 40 [2d Cir. 2000] (stating that the similarity standard is met by plausibly alleging facts showing a "reasonably close resemblance" between the plaintiff and comparators).

Plaintiff was selectively treated because, unlike every other unvaccinated member of the public, he had no choice whether to get vaccinated. *Contra* Jacobson v. Massachusetts, 197 U. S. 11 [1905] (affirming constitutionality of a health order requiring all citizens in Cambridge Massachusetts to get vaccinated against smallpox where there was an outbreak of smallpox in Cambridge Massachusetts); C.F. v. New York City Dep't of Health & Mental Hygiene, 191 A.D.3d 52, 277 [2d Dept. 2020] (holding that health commissioner's order compelling vaccination against measles for everyone living within a four-zip code radius where there was an outbreak of measles to be lawful).

Plaintiff established the plausibility of the second prong as well. The complaint sets forth multiple facts and inferences establishing the plausibility that the "selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as . . . a malicious or bad faith intent" Zahra v. Town of Southold, 48 F.3d 674, 683 [2d Cir. 1995]. Chokshi plausibly discriminated

against Plaintiff through his motivation to increase funding to the agency he led, to further his own scientific research, to benefit one socioeconomic class of people at the detriment of the socioeconomic class Plaintiff belonged to, and to enhance his own status professionally and in the world of academia. (Compl. ¶¶ 175-201).

Eric Adams' selective treatment is even more plausibly motivated by an intention to discriminate based on impermissible considerations. Adams selectively enforced the Mandate against Plaintiff because he wanted to punish Plaintiff for not "doing the right thing" and to ensure that he did not send the wrong message by "rewarding" folks who did not "follow the rules." (Compl. ¶¶ 130-132, 204-206). This also plausibly evinces bad faith and malicious intent to injure Plaintiff (Compl. ¶¶ 219-226). Further Adams was plausibly motivated by monetary gain and discrimination based on socioeconomic status (Compl. ¶¶ 207-218). *Cf.* Dorce v. City of New York, 608 F.Supp.3d 118, 141 [S.D.N.Y. 2022] (finding the plaintiff's equal protection claim to be plausible where the complaint alleged that the City of New York administered a program motivated by racial biases "including perceptions that people of color are less likely to have resources to mount legal challenges and to have the abilities to fight the defendants' tactics"); Kuiken v. County of Hamilton, 6:22-CV-1157, 2023 WL 2984420, at *5 [NDNY Apr. 18, 2023] (holding that complaint plausibly alleged malice or bad faith by merely claiming that the defendants "acted with ill will toward [plaintiff] [] because of his age and disability and/or perceived disability" that the plaintiff was perceived as too old to perform his job and that the charges against the

plaintiff were "the product of age-related bias and concerted action of the defendants"). Plaintiff has pleas far more facts than in those cases.

Additionally, Plaintiff has plausibly alleged a violation of the Fourteenth Amendment and NY Const. art I §XI against the City since the Mandate lacked a rational basis to stopping the transmission of COVID-19. Cherry picking a small minority of the entire population to be vaccinated—based on employment status—is wholly unrelated to protecting the public health from the transmission of a Virus present everywhere. *Cf.* McMinn v. Town of Oyster Bay, 66 N.Y.2d 544, 549 [1985] (holding that "restricting occupancy of single-family housing based generally on the biological or legal relationship between its inhabitants bears no reasonable relationship to the goals of reducing parking and traffic problems"). Similarly, Plaintiff's status as a City Employee bears no reasonable relationship to stopping a virus existing in every place people gather from spreading.

Furthermore, the Mandate plausibly lacked a rational basis because compulsory vaccination for only City Employees could never achieve herd immunity. City Employees make up such a small percentage of the eight million plus residents living or working in the City that it would still be light years away from achieving herd immunity even if every City Employee were vaccinated (Compl. ¶¶ 89-98). There would not be enough people with immunity to stop the Virus from spreading amongst the population *id*. Hence, there is no justification for compulsory vaccination since it would not achieve herd immunity. Accordingly, Chokshi's decision to mandate only City Workers like Plaintiff, was arbitrary and capricious, and not rationally related

to stopping the spread of COVID-19. Moreover, Adams' decision to exclude professional athletes and performers solidified the Mandate's arbitrariness into stone. As such, the facts plead, and reasonable inferences drawn from them, exceed plausibility. Accordingly, Plaintiff's claim alleging a violation of the Equal Protection Clauses should not be dismissed.

As an aside, the Mandate violates the New York State Constitution *see* Garvey et al., v. City of New York et al., 77 Misc.3d 585 [Richmond Cty. Sup Ct. 2022]. Therefore, the Second Circuit's decision in Kane v. DeBlasio, 19 F.4th 152 [2d Cir. 2021], upholding the Mandate as a matter of federal law is not dispositive. *See* Hernandez v. Robles, 7 N.Y.3d 338, 361 [2006] (acknowledging that the New York State Court of Appeals is the final authority when it comes to interpreting the State Constitution). Since the decision in Garvey *id.* has not been decided by a State appellate court, the trial court's decision controls.

## III. IT IS EVEN MORE PLAUSIBLE THAT THE MANDATE VIOLATED THE EQUAL PROTECTION CLAUSE SINCE THE VACCINE DID NOT STOP THE TRANSMISSION OF COVID-19, DEFENDANTS KNEW IT, AND ERIC ADAMS EXEMPTED PROFESSIONAL ATHLETES AND PERFORMERS.

Plaintiff alleges—in painstaking detail—that the vaccine never stopped the Virus or its variants from spreading *see e.g.* (Compl. ¶¶ 65-88). The Mandate itself violates the Equal Protection Clause since it required Plaintiff to be injected with a new permanent, technology that did not prevent the transmission of COVID-19. And Defendants plausibly knew it *see e.g.* (Compl. ¶ 82). Indeed, knowledge can be inferred from Adams' refusal to enforce the private sector mandate and his exclusion

of professional athletes and performers. Inferentially, Adams would have at least universally enforced the Mandate if he believed COVID-19 was vaccine preventable. Nevertheless, the facts as plead leave only one inference—that the Mandate was not reasonably related to protecting the public health since it did not stop transmission of the Virus. Defendants cannot simply leap over this hurdle in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Accepting these facts as true nullifies the Mandate entirely.

Alternatively, Plaintiff has plead facts sufficient to support a "class of one" claim since there is no rational basis for treating him differently than other unvaccinated people living and working in the City. *See* Villiage of Willowbrook v. Olech, 528 U.S. 562, 564 [2000] (holding that a plaintiff can establish a violation of the Fourteenth Amendment by showing that the plaintiff had been treated differently from others similarly situated and that there was no rational basis for the difference in treatment). Indeed, the facts plead here are more sufficient than what was plead in Olech *id* at 565.

Defendants' disparate treatment of unvaccinated Plaintiff compared to unvaccinated members of the public becomes even more discriminatory considering that the vaccine did not stop transmission of the Virus, Adams excluded professional athletes and performers, and did not enforce the Mandate against employees in the private sector. In addition, as Defendants concede, Adams continued to enforce the Mandate against only City Employees until February 6, 2023 (ECF No 7).

Adams' conduct itself is evidence of bad faith or malice. Adams exiled and ostracized Plaintiff and took away Plaintiffs' career for the sole purpose of injuring him *see e.g.* (Compl. ¶172). Contemporaneously, every other unvaccinated person in the City was left alone as long as they were not employed by the City. Unvaccinated professional basketball players like Kyrie Irving were able to play a contact sport while unvaccinated Plaintiff could not speak to unvaccinated inmates from a distance. Unvaccinated Plaintiff could walk into a crowded subway car but not his place of work. The dispositive inquiry should not be whether Plaintiff has plausibly alleged a claim under the Fourteenth Amendment. Instead, it should be how terminating Plaintiff under these circumstances plausibly alleges anything other than bad faith or malice.

Of course, Adams was plausibly motivated by other impermissible considerations. He acknowledged that he excluded athletes for monetary gain. Adams also saved the City from spending by terminating thousands of City Workers. Every employee terminated was one less salary the City had to pay. One less set of benefits it had to provide. Using COVID-19 as a veil for monetary gain is surely impermissible. In addition, Adams and Chokshi convinced millions of New Yorkers to get vaccinated. Acknowledging that the vaccine did not work would harm Adams and Chokshi's professional and personal reputations. Notably, as of November 23, 2023, the "vaccine" is nothing more than an optional, seasonal shot offered with the flu shot. Yet, nothing has changed. That is, the shot was never able to stop transmission of COVID-19. Thus, it is equally plausible that Adams selectively enforced the Mandate

against only City Employees to preserve his political reputation. This is the epitome of bad faith.

## IV. THE CASELAW CITED BY THE DEFENSE IS INAPPOSITE.

The Cases cited by the defendants are inapplicable for two primary reasons. First, they were decided before Adams excluded professional athletes and performers *see e.g.* Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33 [E.D.N.Y. 2021]. Moreover, they were mostly decided before it became glaringly apparent that the vaccine did not stop the transmission of COVID-19. Second, the courts decided those cases in summary proceedings for injunctive relief. The courts were therefore obligated to give deference to the City's alleged public health justification for the Mandate *see* Bronx Household of Faith v. Board of Educ. Of City of New York, 331 F.3d 342, 349 [2d Cir. 2003] (stating that the court must give deference to a regulation challenged in a lawsuit seeking injunctive relief). Here, in contrast, Plaintiff does not seek injunctive relief. Plaintiff directly challenges the same facts that the courts in those cases were required to accept as true. Thus, this case presents disputed facts that should be decided by a trier of fact instead of by the Court. Accordingly, the cases cited by the City and others that the City will rely on are not applicable.

## V. PLAINTIFF PLAUSIBLY ALLEGES THAT THE CITY FAILED TO ACCOMMODATE IN VIOLATION OF TITLE VII SINCE IT WHOLESALE DENIED THE POSSIBILITY OF ANY ACCOMMODATION AND FAILED TO EXPLAIN WHY.

Plaintiff plausibly alleged a claim for failure to accommodate pursuant to Title VII. "It is an unlawful employment practice ... for an employer not to make reasonable

accommodations, short of undue hardship, for the religious practices of his employees and prospective employees." Baker v. The Home Depot, 445 F.3d 541, 546 [2d Cir. 2006]. "To establish a failure-to-accommodate claim under Title VII, a plaintiff must first prove a prima facie case of religious discrimination: namely, that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Philbrook v. Ansonia Bd. of Educ., 757 F.2d 476, 481 [2d Cir. 1985].

Here, Plaintiff satisfied the first two elements by applying for a religious accommodation. Further, Plaintiff was terminated for failing to comply with the conflicting employment requirement—vaccination pursuant to the Mandate. Thus, the complaint sets forth facts satisfying the third element too.

Next, the inquiry turns to "whether the employer complied with the statutory requirement to offer the plaintiff a reasonable accommodation for his or her religious belief, unless doing so would cause the employer to suffer an undue hardship. Chavis v Wal-Mart Stores, Inc., 265 F Supp 3d 391, 398-99 [S.D.N.Y. 2017] (internal quotes omitted). To show undue hardship an employer must show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. Groff v DeJoy, 600 US 447, 473, [2023]. Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assesses the reasonableness of a particular possible accommodation or accommodations. Groff *id.*

Here, the City did not even consider what, if any, accommodation it could offer. It just denied Mr. Chavez's request claiming that it would be an undue hardship. Even more, it did not show how granting an accommodation would "result in substantial increased costs in relation to the conduct of its particular business." Groff v DeJoy, 600 US 447, 473, [2023]. Instead, the City assessed the unreasonableness of any accommodation instead of trying to reasonably accommodate Plaintiff as it must do under Title VII. Mr. Chavez worked through the worse of the pandemic and had the ability to work remotely. The City closed the door to the possibility of accommodating Mr. Chavez. This plausibly violates Title VII.

Furthermore, the Panel's decision on appeal just stated "does not meet criteria" as the basis for denying his appeal. Surely, the boilerplate rejection offered by the Panel falls short of its legal obligations under Title VII. There was no interactive dialogue or any attempt to actually try—in good faith—to accommodate Mr. Chavez's religious practices. Indeed, the City's acceptance of requests for religious accommodations were illusory. It never intended on granting any accommodation in the NYCDOC. Plaintiff, therefore, plausibly alleged that the Defendant failed to accommodate in violation of Title VII.

## VI. THE MANDATE VIOLATED MR. CHAVEZ'S SUBSTANTIVE DUE PROCESS RIGHTS AS APPLIED.

The Mandate violated Mr. Chavez's due process right to pursue a profession of his choosing. "[D]ue process is violated only by the complete prohibition of the right to engage in a calling." Singleton v. Cecil, 176 F.3d 419, 426 n.8 [8th Cir. 1999]. Mr.

Chavez's chosen profession is much more than working in a jail (Compl. Pp 1-6). Mr. Chavez's chosen profession was working within Rikers Island because it presented opportunities unparalleled in other correctional facilities *id.* As applied here, Mr. Chavez's calling was working with the most marginalized members of society within the country's largest correctional institution. It was not solely reserved to working in jails. Accordingly, as a result of the Mandate, Mr. Chavez is prevented from pursuing his chosen profession. Put differently, the complaint plausibly alleges that the Mandate prevented him from pursuing his chosen profession.

Next, Plaintiff has established that the Defendants "action was so egregious, so outrageous, that it may be fairly said to shock the contemporary conscience" Maniscalco v New York City Dept. of Educ., 563 F Supp 3d 33, 39 [EDNY 2021]. Defendants' enforcement of the Mandate against only Plaintiff during a city-wide outbreak of communicable disease shocks the conscience. Defendants treated Plaintiff like a second-class citizen. They stole over a decade of hard work and accomplishments from Plaintiff. They punished Plaintiff for being employed by the City. And Adams only enforced the Mandate against City Employees.

During a public health emergency, the public bears the burden of shouldering the weight to alleviate the threat. Not individuals like Plaintiff. Further, deciding who gets vaccinated based on employment status is so arbitrary that it is akin to compelling vaccination based on any other arbitrary factor like race, sex, hair color or national origin. Surely, this plausibly alleges conduct that shocks the contemporary conscience. Simply put, there is no precedent for the proposition that

the government can arbitrarily select a few—out of the many exposed to an outbreak of disease—to be vaccinated. The Supreme Court in Jacobson v. Massachusetts, 197 U. S. 11 [1905] upheld the order there, in part, because it applied equally to adults. Enforcing the Mandate against Plaintiff only, plausibly shocks the conscience.

Alternatively, this Court in Maniscalco v New York City Dept. of Educ., 563 F Supp 3d 33, 39 [EDNY 2021] recognized another basis for the deprivation of Mr. Chavez's substantive due process rights. The Court stated that applying "Jacobson, the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law. " (internal quotes omitted). The Court went on to acknowledge that "[r]equiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as a plain, palpable invasion of such rights, not having any real relation to the public health crisis" *id.*

Here, Plaintiff plausibly alleged that the Mandate wholly lacked a real or substantial relation to the public health crisis. Plaintiff further established the factual predicate to discern that the defendants' conduct qualified as a "plain, palpable invasion of such rights". Maniscalco *id.* Requiring Plaintiff to take a shot that does not stop transmission of COVID-19—like ivermectin—has no relation to the public health crisis. As such, requiring Plaintiff to take a shot that has no relation to the public health crisis similarly constitutes a "plain palpable invasion of such rights"

just as requiring ivermectin would. Accordingly, the Mandate violates Mr. Chavez's substantive due process rights.

## CONCLUSION

For the plethora of reasons set forth above, Plaintiff has plausibly established claims for every cause of action plead. Therefore, this Court should not dismiss the complaint.

Dated: November 23, 2023
Uniondale, New York

Respectfully Submitted,



______________________

CHAD J. LAVEGLIA ESQ.,
LAW OFFICE OF CHAD J LAVEGLIA PLLC
626 RxR Plaza, Suite #613
Uniondale, NY 11556
(631) 450-2468
claveglia@cjllaw.org