UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIEL CHAVEZ

        Plaintiff,

-against-

CITY OF NEW YORK

        Defendants

Case no: 23-cv-7754 (NCM) TAM)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF CHAD J. LAVEGLIA PLLC
350 Motor Parkway, Suite #308
Hauppauge, New York 11788
(631) 333-8478
claveglia@cjllaw.org

*Attorneys for Plaintiff*

# Table of Contents

**ARGUMENT** .................................................................................................................................3
  POINT 1 ....................................................................................................................................3
  I.  THERE IS A GENUINE DISPUTE OF MATERIAL FACTS OVER GRANTING AN ACOMMODATION AND THE ABSENCE OF AN UNDUE HARDSHIP ...............................................................................3
    A.  Defendant's Claim That Granting Mr. Chavez An Accommodation To Test Weekly Would Be An Undue Hardship Is Disputed By The Facts. ...................................................................3
    B.  Defendant's Assertion That And Undue Hardship Existed Because Mr. Chavez Would Present A Direct Threat To Other Staff And Inmates If He Remained Unvaccinated Is Directly Contested By Facts. 4
  POINT II ....................................................................................................................................7
  II. DEFENDANTS MOTION SHOULD BE DENIED BECAUSE IT FAILS TO PREVAIL AS A MATTER OF LAW. ....7
    A.  Plaintiff has Established The Sincerity of his religious beliefs And That They Conflicted With The Vaccine Mandate ......................................................................................................7
    B.  Defendant Fails to Proffer Evidence That Granting An Accommodation Would Have Resulted In An Undue Hardship Under the McDonnell-Douglas Burden Shifting Framework. ............................13
**CONCLUSION** ...........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**
Anderson v. Liberty Lobby, Inc., 477 U.S. 242 [1986] ................................................... 5, 6
Barnett v. Inova Health Care Services, 125 F.4th 465 [4th Cir. 2025] ............................ 9
Dana Mobius and Hans Mobius v. Quest Diagnostics et. al., 687 F.Supp.3d 357, [W.D.N.Y. 2023] ............................................................................................................. 15
Famiglietti v. New York City Department of Sanitation, 2024 WL 4606817 [E.D.N.Y. 2024]. ............................................................................................................................. 10
Gardner-Alfred v Fed. Reserve Bank of New York, 651 F Supp 3d 695 [S.D.N.Y. 2023] .................................................................................................................... 8, 10
Groff v DeJoy 600 US 447, [2023] ................................................................. 14, 15, 16
In re Mirena IUD Products Liability Litigation, 202 F.Supp.3d 304 [S.D.N.Y 2016] ............................................................................................................................ 14
Kirkland v. Cablevision Sys., 760 F.3d 223 [2d Cir. 2014]. .......................................... 6
Leonhartt v. MedStar Health, Inc. 2025 WL 744077 [D. Maryland, 2025] ................... 9
McDonnell Douglas Corp. v. Green, 411 U.S. 792 [1973] ............................... 4, 14, 16
Patrick v. LeFevre, 745 F.2d 153 [2d Cir. 1984] ......................................................... 8, 9
Phoenix Light SF Limited v. Wells Fargo Bank, N.A. 574 F. Supp.3d 197 [S.D.N.Y 2021] ............................................................................................................................. 15
Scott v. Harris, 550 U.S. 372 [2007] ............................................................................... 4
Tabura v Kellogg USA, 880 F3d 544,[10th Cir 2018] ..................................................... 8
Thomas v. Review Bd. of Indiana Employment Sec. Division, 450 U.S. 707 [1981].. 8, 13
United States v. Mirabel, 2023 U.S. Dist. LEXIS 39121, [S.D.N.Y March 8, 2023] ... 6

**Regulations**
29 C.F.R. §1605.1 ............................................................................................................ 9

ARGUMENT

POINT 1

I. THERE IS A GENUINE DISPUTE OF MATERIAL FACTS OVER GRANTING AN ACOMMODATION AND THE ABSENCE OF AN UNDUE HARDSHIP.

   A. Defendant's Claim That Granting Mr. Chavez An Accommodation To Test Weekly Would Be An Undue Hardship Is Disputed By The Facts.

Defendant could have allowed Mr. Chavez to test weekly. In fact, according to Defendant's own evidence, "the only allowable accommodation from vaccination without causing an undue hardship and/or disruption is submission of a weekly negative test result." (Def. Ex C, p 8, ¶ 24). In addition, the Department of Corrections (DOC) granted one (1) employee a religious accommodation (Ex. 1). Quizzically, Bijan Vafegh did not "know what kind of alternatives there would be, for vaccination exemption requests" when he denied Mr. Chavez's request. (Ex. 2: Deposition Bijan Vafegh; 15: 16-25). Nor was there a discussion about accommodating Mr. Chavez *id*. Therefore, Defendants failure to accommodate Mr. Chavez, was unrelated to any undue hardship. These facts directly undercut Defendant's claim that a weekly negative test result was not a possible accommodation, Mr. Chavez's accommodation would have allowed him to work in person unvaccinated and that it would have sustained an undue hardship (Def. Memo of Law 9-10). A weekly negative test would prove that Mr. Chavez could not infect anyone. Accordingly, a rational jury could find that Defendant could have accommodated Mr. Chavez without incurring an undue hardship. *See* Scott v. Harris, 550 U.S. 372, 380 [2007] (stating that there is no

3

genuine issue of material fact when the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party . . .").

    B. Defendant's Assertion That And Undue Hardship Existed Because Mr. Chavez Would Present A Direct Threat To Other Staff And Inmates If He Remained Unvaccinated Is Directly Contested By Facts.

Initially, it is Defendant's burden to show that accommodating Mr. Chavez would have resulted in an undue hardship since he would have posed a health risk to others by not being vaccinated. *See* McDonnell Douglas Corp. v. Green, 411 U.S. 792 [1973]. As discussed *inter alia,* Defendant has not met its burden. Nevertheless, whether Mr. Chavez would have posed a direct threat to others by not being vaccinated is squarely an issue for only the trier of fact since they could resolve the issue in favor of either party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 [1986].

Plaintiff asserts that the COVID-19 vaccine would not have prevented him from transmitting SARS-CoV-2 (Virus)—presuming he was infected. *See e.g.* (ECF No 1 ¶¶ 47-98). As such, granting the next possible accommodation besides weekly testing—going to work—would not have posed a direct threat. Plaintiff acknowledged that the vaccine may have been successful in reducing the spread of COVID-19 in the beginning of the pandemic, but it did not stop the transmission of subsequent variants *id.* (at ¶168). Mr. Chavez was placed on leave without pay on December 29, 2021. *Id.* (at ¶ 114). The defendant terminated him on February 11, 2022, *id.* The first Omicron case in the United States occurred approximately on December 1, 2021,

4

according to the CDC.[1] The shot did not, and could not, stop the spread of the subsequent variants such as the Omicron strain. *See* (Ex. 3: Infographic of vaccination implementations and efficacy).

Plaintiff highly controverts, the defendant's assertion that it could not accommodate Mr. Chavez because he would present a direct threat to others by not being vaccinated since the vaccination did not stop the spread of the Virus. (Ex. 4: Vafegh letter denying accommodation). However, a plethora of studies and reports state otherwise. This Court should take judicial notice just as Defendant asks it to *see* United States v. Mirabel, 2023 U.S. Dist. LEXIS 39121, at *22 n.5 [S.D.N.Y March 8, 2023] (noting that courts in this Circuit routinely take judicial notice of "facts from reputable medical sources").

Plaintiff's factual assertions that the shot did not stop the spread of the variants is out of bounds for this Court to decide. This Court is bound to "draw all rational inferences in the [plaintiff's] favor" when reviewing the record. Kirkland v. Cablevision Sys., 760 F.3d 223, 224 [2d Cir. 2014]. "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter." Anderson *id.* Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for trial." *Id.*

Pfizer itself openly acknowledged that its vaccine was never tested to stop the transmission of the Virus, nor did it stop the spread of variants.[2] *See* (Reuters). This

---

[1] https://stacks.cdc.gov/view/cdc/112178#:~:text=First%20confirmed%20case%20of%20Omicron,:%20Wednesday%2C%20December%201%2C%202021 (last accessed June 27, 2025).
[2] https://www.reuters.com/fact-check/preventing-transmission-never-required-covid-vaccines-initial-approval-pfizer-2024-02-12/#:~:text=In%20the%20video%2C%20Roos%20then,taking%20place%20in%20the%20market.%E2%80%9D (last accessed June 27, 2025).

5

peer reviewed study found that COVID-19 cases were actually higher in vaccinated individuals and that no "convincing evidence [exists] that the COVID-19 vaccination significantly reduces the risk to transmit SARS-CoV-2 to others." [3] This 2023 study published in Elseveir found that vaccinated individuals were just as susceptible as unvaccinated individuals who were previously infected.[4] A study conducted by the Yale School of Public Health found that individuals who were boosted were only 40% less likely to be infected compared with unvaccinated individuals. It further concluded that vaccinated individuals were even more likely to transmit the delta variant. [5] This 2023 study published in the National Library of Medicine found that multiple shots only provided a mere 26% protection of infection after 100 days.[6] Another study by Yale University demonstrated that the bivalent vaccine did not stop the transmission of the variants. (Ex. 5 : Effectiveness of Bivalent Vaccine). A study conducted by the Louisiana State University School of Medicine also found that the vaccine did not fully stop the spread of the variants.[7] Then there is the breakthrough cases and need for multiple booster shots because the original vaccine waned over time and failed to protect individuals from infection. Thus supporting the inference that the shot did not stop the spread of the variants.

Finally, this comprehensive report issued by the United States House of Representatives bipartisan Select Subcommittee on the Coronavirus Pandemic

---

[3] https://pubmed.ncbi.nlm.nih.gov/39283431/ {last accessed June 27, 2025).
[4] https://pmc.ncbi.nlm.nih.gov/articles/PMC10198735/ (last accessed June 27, 2025).
[5] https://ysph.yale.edu/news-article/delta-variant-waning-immunity-reduced-pfizer-vaccines-effectiveness-against-household-transmission/ (last accessed June 27, 2025).
[6] https://pmc.ncbi.nlm.nih.gov/articles/PMC9941049/#Sec2 (last accessed June 27, 2025).
[7] https://digitalscholar.lsuhsc.edu/som_facpubs/1631/ (last accessed June 27, 2025).

contains a myriad of findings that not only show that the shot could not fully stop transmission but also that much of the narrative spread by Defendant was false. [8] Ultimately, Defendant has no leg to stand on. Whether Plaintiff would have posed a direct threat to others unless he was vaccinated is clearly a genuine issue of material fact since a rational trier of fact could decide for either party. If the trier of fact finds in the negative then there would be no undue hardship for Defendant and vice versa. The fact finder's determination directly affects the verdict it would render. Accordingly, Defendant's motion for summary judgment should be denied because genuine issue of material fact exists.

POINT II

II.  DEFENDANTS MOTION SHOULD BE DENIED BECAUSE IT FAILS TO PREVAIL AS A MATTER OF LAW.

A. Legal Standard

"At the first step of that analysis, it is the employee's burden to establish a prima facie claim by showing that 1) the employee has a bona fide religious belief that conflicts with a job requirement, 2) the employee informed the employer of this conflict; and 3) the employer fired the employee for failing to comply with the job requirement." Tabura v Kellogg USA, 880 F3d 544, 551 [10th Cir 2018].

A. Plaintiff has Established The Sincerity of his religious beliefs And That They Conflicted With The Vaccine Mandate.

---

[8] https://oversight.house.gov/wp-content/uploads/2024/12/2024.12.04-SSCP-FINAL-REPORT-ANS.pdf (last accessed June 27, 2025).

7

Mr. Chavez held a bona fide religious belief. 'The inquiry as to whether a person's belief is religious is twofold: "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." Gardner-Alfred v Fed. Reserve Bank of New York, 651 F Supp 3d 695, 720 [S.D.N.Y. 2023] *quoting* Patrick v. LeFevre, 745 F.2d 153, 157 [2d Cir. 1984]. The determination of what is a "religious belief or practice is more often than not a difficult and delicate task . . .[and] the resolution of that question is not to turn upon a judicial perception of the particular belief or practice in question . . ." Thomas v. Review Bd. of Indiana Employment Sec. Division, 450 U.S. 707, 714 [1981]. Further, it is well established that the definition of religion under Title VII is highly subjective and "examines an individual's *inward* attitudes towards a particular belief system." Gardner-Alfred, *id.* Indeed, Mr. Chavez's beliefs are safeguarded as long as Mr. Chavez conceives of his beliefs as religious in nature. LeFevre, *id.* Religious practices encompass "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. §1605.1. As the Fourth Circuit recently noted, determining the sincerity of an individual's beliefs is almost "entirely a credibility assessment and can rarely be determined on summary judgment." Leonhartt v. MedStar Health, Inc. *6 2025 WL 744077 [D. Maryland, 2025] *quoting* Barnett v. Inova Health Care Services, 125 F.4th 465, 470 [4th Cir. 2025].

The amorphous nature of determining the sincerity of Mr. Chavez's religious beliefs though, had been recognized long before by the Second Circuit Court of Appeals. In Patrick v. LeFevre, the Court aptly explained how this Court should

8

conduct the sincerity analysis considering the myriad of complexities 745 F.2d 153, 157 [2d Cir. 1984]. It stated:

> "This test provides a rational means of differentiating between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud. The latter variety, of course, must be subject to governmental invasion, lest our society abjure from distinguishing between the incantation of "sincerely held religious beliefs" as a talisman for self-indulgence or material gain and those beliefs genuinely dictated by conscience. Sincerity analysis is exceedingly amorphous, requiring the factfinder to delve into the claimant's most veiled motivations and vigilantly separate the issue of sincerity from the factfinder's perception of the religious nature of the claimant's beliefs. This need to dissever is most acute where unorthodox beliefs are implicated. There, the factfinder's temptation to merge sincerity and verity is as great as the need to guard against this conjugation. Accordingly, assessing a claimant's sincerity of belief demands a full exposition of facts and the opportunity for the factfinder to observe the claimant's demeanor during direct and cross-examination. A more cursory evaluation raises the spectre that the sincerity issue was decided by reference to the factfinder's perception of what a religion should resemble."

Defendant has not shown that Mr. Chavez's beliefs are "animated by motives of deception and fraud." *Id.* To the contrary, Mr. Chavez's beliefs are squarely sincere and religious in his scheme of things. Defendants view the sincerity of his beliefs through their own personal lens. Furthermore, in Defendant's attempt to undermine Plaintiffs failure to accommodate claim it relies on cases that are inapposite. The defendant's cite cases adjudicating CPLR §7803 claims, Petitions for injunctive relief, and other cases that "have no line of bearing on whether Plaintiff's beliefs were sincerely held religious beliefs" <u>Famiglietti v. New York City Department of Sanitation,</u> *4 2024 WL 4606817 [E.D.N.Y. 2024]. Thus, Defendant's reliance on inapplicable caselaw is fatal. Applying these principles, there is no doubt that Mr.

9

Chavez's religious beliefs are sincerely held and religious within his own scheme of things.

Mr. Chavez's credible assertions are more than sufficient. *See* Gardner-Alfred, *id.* at 721 (stating that "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions"). Mr. Chavez believes, as a Christian, that he has free will to make choices (Ex. 6: Chavez Request for a Reasonable Accommodation). Mr. Chavez explained that "[a]t the end of [his] life, [he] must account to God for [his] actions and choices . . ." (*id.*). Mr. Chavez's beliefs are derived from the Catechism of the Catholic Church. Chapter One, Article 3, discusses the same theological concepts Mr. Chavez articulated[9]. It states that the freedom to choose, when aligned with God, leads one to live a righteous path in service of what is good and right. The choice to do evil on the other hand, is considered an abuse of this freedom. Additionally, Mr. Chavez's religious beliefs are tethered to teachings of the Catholic Church positing that freedom of will means that humans are to be "immune from coercion on the part of . . . social groups and of any human power, in such wise that no one is to be forced to act in a manner contrary to his own beliefs." [10]

Mr. Chavez's belief in free will means that choosing to act consistent with his Christian values and beliefs is the difference between going to Heaven or Hell. For example, Mr. Chavez helped a handicapped man travel eight (8) blocks on Memorial

---

[9] https://www.vatican.va/content/catechism/en/part_three/section_one/chapter_one/article_3/i_freedom_and_responsibility.html (last accessed June 26, 2025).
[10] https://www.vatican.va/archive/hist_councils/ii_vatican_council/documents/vat-ii_decl_19651207_dignitatis-humanae_en.html (last accessed June 26, 2025).

10

Day (Ex. 7, Chavez Deposition. 67: 1-25). By having free will, Mr. Chavez is ultimately accountable for his actions and must answer to God for the choices he has made. Thus, making pure, righteous decisions brings him closer to Heaven. Whereas actions inconsistent with his Christian values and beliefs will lead him down a path towards eternal damnation. The freedom to choose between making good and evil choices is what justifies whether one goes to Heaven or Hell. Mr. Chavez's belief that he must account to God at the end of his life for his actions and choices is extremely significant because it guides every decision he makes. In this case, it guided him in his deliberations to take the shot.

In addition, Mr. Chavez does not voluntarily take vaccines (Ex. 7, 69: 24). The last time he received any vaccination was in 1997 when he joined the Army (Ex. 7, 68: 5-10). Further, he does not recall ever receiving the flu shot and definitively denied getting one in the past ten to fifteen years (Ex. 7, 70: 1-2). Mr. Chavez's belief in free will however, is only half of the analysis.

The core religious tenet that conflicted with Defendant's Vaccine Mandate is that "God created [him] with the ability to endure infectious diseases by providing [him] with a natural immune system." (Ex 6). God created man in his image and endowed him with the ability to fight infectious viruses. It follows that Mr. Chavez was forced to choose between his belief that God had provided him with the ability to fight the SARS-CoV-2 virus (Virus) and the government's mandate that he be injected with a substance meant to replace what God had endowed upon him. It would also alter the

11

immune system God endowed him with and force him to choose a manmade solution over a divine one.

Thus, getting the shot would have forced Mr. Chavez to abandon his unwavering belief that God had endowed him with all the tools his body needed to combat the Virus. It would replace what God gave him. It would force him to choose over God's will to protect his health. Mr. Chavez expressly believes that God is the ultimate authority and receiving the shot would usurp God's authority.

Significantly, Mr. Chavez expressed that by taking the vaccine he would not be "walking in faith" with God (Ex 6. 50: 4-5). Hence, Mr. Chavez's conscience led him to conclude that this was something he simply could not do without violating his religious belief. This is the conflict. Mr. Chavez prayed long and hard about it too (Ex.6 , 46: 1-16). Defendant's myopic interpretation is far from dispositive since "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others . . ." Thomas v. Review Bd. of Indiana Employment Sec. Division, 450 U.S. 707, 714 [1981]. Further, Defendants have offered no evidence that Mr. Chavez's beliefs are fraudulent, concocted for litigation, or otherwise not sincerely held *see* Leonhartt v. MedStar Health, Inc. *6 2025 WL 744077 [D. Maryland, 2025].

Finally, Mr. Chavez consulted with Chaplain Justin Bujdoss throughout the process. This can only help Plaintiff since it is not required. Chaplain Bujdoss supported Mr. Chavez's religious beliefs and their sincerity (Ex 6, 64: 15-21). Mr. Chavez had seen Chaplain Buijdos regularly as well. Chaplain Bujdoss submitted a letter to Defendant explaining how Mr. Chavez's beliefs were consistent with

Christian values tracing back to the 18th century (Ex. 8, Letter from Chaplain Bujdoss). He wrote the letter for Mr. Chavez precisely in support of the sincerity of his religious beliefs. Therefore, there is no doubt that Mr. Chavez's religious beliefs were sincerely held and religious in his scheme of things. Defendants motion should be denied because it fails to negate Plaintiff's prima facie case as a matter of law. Therefore, Defendant's motion should be denied because Plaintiff established a prima facie case.

   B. Defendant Fails to Proffer Evidence That Granting An Accommodation Would Have Resulted In An Undue Hardship Under the McDonnell-Douglas Burden Shifting Framework.

The familiar burden shifting approach outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 [1973] requires the defendant to show that accommodating Mr. Chavez would have presented an undue hardship. Recently in Groff v DeJoy, the Supreme Court defined undue hardship; holding, that Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business. 600 US 447, [2023]. Defendant has woefully failed to offer any evidence supporting an undue hardship.

First, Defendant has not proffered any evidence showing how weekly testing would have caused it an undue hardship by creating a direct health threat to others. The defendant leaves a black hole of conclusions.

Second, Defendant does not offer any scientific evidence or expert testimony whatsoever. It has not presented a scintilla of evidence showing how Mr. Chavez

13

would have presented a direct threat unless he was vaccinated. Mr. Vafegh's letter for example, claiming that Mr. Chavez would present a direct threat, is not evidence that of its truth. It is a scientific and medical conclusion made by a layperson *see generally* (Ex 2).

Third, Defendant was required to present expert witness evidence *see* In re Mirena IUD Products Liability Litigation, 202 F.Supp.3d 304 [S.D.N.Y 2016] (finding that the party with the burden of establishing causation in a products liability could not prevail in the summary judgment stage since it needed to proffer expert testimony because proving causation involved scientific questions beyond the understanding of the average juror). Analogously, whether an individual would present a direct health threat to others unless he received a specific biological product that did not fully stop the transmission of the dangerous virus, is deeply complex, scientific, and beyond the understanding of a lay person. In addition, issues such as whether the vaccine was effective at preventing the spread of COVID-19 variants and whether Mr. Chavez would pose a direct threat unless he received it, requires expert evidence for the same reasons. *C.f.* Dana Mobius and Hans Mobius v. Quest Diagnostics et. al., 687 F.Supp.3d 357, [W.D.N.Y. 2023] (acknowledging the necessity of an anesthesiologist's expert testimony in a medical malpractice proceeding); *accord* Phoenix Light SF Limited v. Wells Fargo Bank, N.A. 574 F. Supp.3d 197 [S.D.N.Y 2021] (expert testimony allowed in residential-mortgage-backed securities claim). Defendant's failure to proffer scientific, medical, or expert evidence is fatal. Defendant's reliance on case law to establish pure questions of fact is also fatal.

Second, Defendant presents no evidence that accommodating Mr. Chavez through weekly testing would have "resulted in substantial increased costs in relation to the conduct of its business." Groff *id.* There are no facts. Costs for example, are not discussed. There is no evidence of how accommodating Mr. Chavez by allowing for weekly testing or exempting him from the Mandate would have resulted in a substantial increase in costs. [11] Accordingly, Defendant's motion for summary judgment must be denied because it has not shown how granting Mr. Chavez the option of weekly testing as an accommodation would cause an undue burden, nor how it would impose a substantial costs or how Mr. Chavez would be a direct threat.

Alternatively, Even if Defendant were entitled to rely on public health guidance at the time, its failure to assess Mr. Chavez individually — and the lack of any specific risk analysis, expert opinion, or operational cost impact tied to him — renders its 'direct threat' justification insufficient as a matter of law under Groff and McDonnell Douglas.

## CONCLUSION

Defendant's denial of Mr. Chavez's religious accommodation was not based on evidence, but on expedience. It invoked "direct threat" as a talisman to avoid the statutory obligation to accommodate, yet offered no individualized assessment, no scientific or medical support, and no meaningful exploration of alternatives. Title VII does not permit employers to presume hardship in the absence of proof.

---

[11] In addition to the absence of evidence, because the DOC only granted roughly .027% of requests of religious accommodations and all DOC workers would be a direct threat under the defendants view it is likely that the DOC merely sent out boilerplate letters to every request for a religious accommodation it denied.

15

Whether the COVID-19 vaccine prevented transmission during the relevant period is a materially disputed fact — and Defendant's own justification for termination hinges entirely on that contested premise. Plaintiff has marshaled scientific studies, factual assertions, and unrebutted evidence exposing that premise as, at best, debatable. This is the heart of what juries are for: to resolve disputes of fact, not courts on summary judgment.

Nor can Defendant hide behind generalized costs or institutional deference. Groff v. DeJoy makes clear that the standard is not "some burden" — it is substantial increased cost, *tied specifically* to the accommodation in question. Defendant identifies none with evidence. And it never explains why weekly testing — the very alternative it deemed acceptable elsewhere — was suddenly unavailable to Mr. Chavez.

Mr. Chavez has made his prima facie case. He held a sincere religious belief, informed his employer, and was fired for living by it. Defendant, in turn, has produced no evidence of undue hardship, no evidence of a direct threat, and no evidence of any cost. In our system, that is not a close call — that is the end of the inquiry.

For all these reasons, and because the law demands more than conjecture dressed as justification, Defendant's motion should be denied in its entirety.

Dated:   June 27, 2025
         Hauppauge, New York

_____
Chad J. LaVeglia Esq.,



Law Office of Chad J. LaVeglia PLLC
Chad J. LaVeglia Esq.
350 Motor Parkway, Suite #308
Hauppauge, NY 11788
(631) 333-8478
www.cjlawny.com

UNITED STATES DISTRICT COURT

17

EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DANIEL CHAVEZ<br><br>      Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK<br><br>      Defendants | Case no: <u>23-cv-7754 (NCM) TAM)</u> |

**CHAD J. LAVEGLIA,** an attorney duly admitted to practice before the United States District Court for the Eastern District of New York, certifies that pursuant to Local Rule 7.1(c) that the total numbers of words contained herein, exclusive of cover page, captions, table of authorities, table of contents, and signature block is 4,263 words according to the word count function in Microsoft Word.

Dated:   June 27, 2025
         Hauppauge, New York

_____
Chad J. LaVeglia Esq.,