UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL CHAVEZ<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>CITY OF NEW YORK<br><br>　　　　　　　　Defendant | PLAINTIFF'S LOCAL<br>RULE 56.1 STATEMENT<br><u>IN OPPOSITION</u><br><br><br><br>1:23-cv-7754 (NCM) (TAM) |

Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Court for the Eastern District of New York, Plaintiff responds as follows:

1. Admit

2. Admit

3. Admit

4. Admit

5. Deny. There is no evidence that Plaintiff's role required working in person. Plaintiff worked remotely at his discretion. *See* Plaintiff's Deposition as Defense Exhibit (Def Ex.) A at 25:3-4.

6. Admit

7. Admit

0

8. Admit

9. Admit

10. Admit

11. Admit

12. Admit.

    a. Plaintiff infrequently interacted with people in custody (Def Ex. A 31:9-20). [1]

13. Deny. Plaintiff interacted with staff in a myriad of ways depending on the training requirements being developed, monitored, or overseen (*id.* at 30:1-4). Plaintiff had a myriad of virtual meetings with staff since people were not in the same location (*id.* at 5-14).

14. Admit.

    a. The World Health Organization has no authority over the United States. Further, the United States withdrew from the WHO based on its mishandling of the COVID-19 pandemic. [2]

15. Admit

16. Admit.

    a. The Vaccine Mandate permitted employees to submit proof of negative PCR diagnostic tests. (*See* Def Ex B).

17. Admit.

---

[1] Lettered paragraphs include additional material facts pursuant to Local Rule 56.1(b).
[2] https://www.whitehouse.gov/presidential-actions/2025/01/withdrawing-the-united-states-from-the-worldhealth-organization/ (last accessed April 9, 2025).

1

18. Admit.

19. Admit.

20. Admit.

21. Admit.

22. Admit.

    a. The City specifically stated that submission of a weekly, negative PCR test result was the only allowable accommodation from vaccination (Def Ex B. at 9).

23. Admit.

24. Admit.

25. Admit.

26. The New York City Department of Corrections (DOC) received 2,000 or more requests for religious accommodations. *See* Deposition of Bijan Vafegh (Vafegh) annexed as Exhibit 1, at 12:11-21 (Pltf Ex). Vafegh reviewed the vast majority of them *id.* Nancy Bleakley, Elizabeth Lundi, and Florina Getman reviewed some of them (*id.* at 13:1-10). Requests came in various forms such as email, interoffice mail, and regular mail (*id.* at 17:1-12). Once a request was received it was put into a folder with basic pedigree information (*id.* at 13-17). There were piles of folders all related to the vaccine (*id.* at 17). Vafegh thinks they alphabetized them (*id.* at 19). Vafegh went through them as best as he could (*id.* at 20).

27. Defendant processed accommodation requests as they came through, it did not wait to ensure there was adequate information *id.* Mr. Vafegh reviewed Mr. Chavez's request for a religious accommodation (*id.* at 10:9-25, 11:1-18). There was absolutely no "cooperative dialogue process" with Mr. Chavez. (*See* Def Ex A 47:11-23). Vafegh denied Mr. Chavez's request for an accommodation without speaking to Mr. Chavez *id.*

    a. Mr. Vafegh does not recall speaking with Mr. Chavez or engaging in a cooperative dialogue (Pltf Ex 1. at 15:21-25). Mr. Vafegh did not believe there would be any means to accommodate Mr. Chavez because he felt that masking and/or testing were not suitable accommodations (*id.* 16:4-16). Thus—Mr. Vafegh opined—there was no dialogue to be had since Mr. Chavez could not be accommodated (*id.*). Mr. Vafegh determined that accommodating Mr. Chavez through masking and testing would present a direct threat to the population at Rikers (Pltf Ex 1 at 14:10-19). This opinion was not based on any medical or scientific sources that Mr. Vafegh could recall (*id.* at 15:2-10). It is not clear what this opinion was based on at all.

    b. No Defendant offered or attempted to offer Plaintiff an accommodation *id.*

    c. The City claimed that testing would be offered as an accommodation, yet it denied Mr. Chavez's request on the basis that weekly testing was not a possible accommodation *id.*

3

    d. Mr. Vafegh and the other staff in the EEO received little to no training about evaluating religious accommodation requests in the context of COVID-19 (*see* Pltf Ex 1, at 25:4-6).

28. The DOC EEO Office issued a determination letter denying Mr. Chavez's request for a religious accommodation allowing him to test weekly. (*See* Pltf Ex 2).

29. Admit.

30. Admit.

31. Admit.

32. Admit.

33. Deny. The Citywide Appeals Panel (Panel) relied on mere guidance from an agency within the Executive Branch, not the law (Def Ex E, at 32).

34. Deny. The Panel might have tried to ensure uniformity but there is no evidence it achieved it. To the contrary, Vafegh believed an accommodation would cause a direct threat, the City stated that testing was the only accommodation it would provide, and two (2) members of the Panel felt that there was no direct threat (*see* Pltf Ex 1, Def Ex B, Def Ex E).

35. Admit.

36. Deny. The members of the panel who reviewed Plaintiff's appeal had no expertise in either religious tenants or the applicable law since it apparently relied on mere guidance. (*See* Def Ex E at 33). [3]

---

[3] To the extent anything in Exhibit E is admitted it is done so for purposes of admitting it was said not that it is admissible.

4

37. Admit that the Panel might have changed.

38. Medical accommodations are not material.

39. Admit.

40. Admit the general process but deny any evidence that this was done for Mr. Chavez.

41. Deny. It is unclear what the Panel did here or how it evaluated Mr. Chavez's religious beliefs on appeal.

42. Admit. However, no one asked Mr. Chavez to explain the "religious nature of his beliefs." (*See* Def Ex A 47:11-23; Pltf Ex 3; Pltf Ex 1. at 15:21-25).

43. There is nothing in the record to indicate that the Panel applied these factors.

44. Admit.

45. Deny. The Panel was not in a position to determine whether Mr. Chavez's religious beliefs were sincerely held.

    a. As the Disability Rights Coordinator and an attorney, Mr. Vafegh had significant expertise with Title VII claims and related federal claims. (*See* Pltf Ex 1).

    b. Despite having significant experience and training, Mr. Vafegh was unable to determine whether Mr. Chavez's religious beliefs were sincerely held because he aptly acknowledged that it is deeply personal and he lacked the information to challenge his religious beliefs, especially considering the infinite nuances within religious belief systems and between religious beliefs (*id.* at 27:1-21).

5

46. Deny. There is no evidence that the Panel actually reviewed a record here.

47. Admit.

48. Admit that Mr. Chavez was notified. However, he was provided with no basis as to why (*see* Pltf Ex 4). The Panel merely stated, "does not meet criteria."

49. Deny. Different processes existed for different agencies (*see* Def Ex B at 1).

50. Admit. Plaintiff also requested an accommodation to be tested weekly and agreed to comply with the DOC's current protocol (*see* Def Ex F).

51. Plaintiff is stating in his request, in sum and substance, that he be provided the accommodation to be tested weekly. God has created him in God's own image and that he is endowed with free will and choice. They are core, immutable values. In addition, it is Plaintiff's belief that God created him to naturally fight infectious diseases. Meaning, he was created by God with the tools to fight disease. Taking preventative medicine in this instance goes against that core tenant. To Plaintiff, this type of preventative medicine is contrary to his belief that God created him with an able natural immune system to naturally combat it. Indeed, natural immunity did prevail in equal force to vaccination.[4] Requiring Plaintiff to take the shot also deprives him of free will and choice. Which violates the first core tenant. Put differently, the requirement to get vaccinated would force Plaintiff to be injected with something that is contrary to his religious beliefs. Thus, depriving him of choice by taking his option away.

---

[4] https://pmc.ncbi.nlm.nih.gov/articles/PMC10198735/ (last accessed April 9, 2025).

    a. Plaintiff also submitted a letter from Chaplain Justin Von Bujdoss (*see* Pltf Ex 5). This letter unequivocally confirms that Mr. Chavez's religious beliefs are firmly rooted, even though his burden is not nearly that high.

52. The test would ensure that Plaintiff did not go into work infected with COVID-19. This is a reasonable accommodation. The City provided it across agencies. Further, a negative test means he is not contagious.

53. Admit.

54. Admit in part. The letter indicated numerous grounds based on the spread of COVID-19, consistent with the Mandate.

55. Admit.

56. Admit in part. Stopping contagious diseases is not one of DOC's primary responsibilities.

57. Deny. The Vaccine Mandate's purpose was to stop the spread of COVID-19 (*see* Def Ex B).

58. Deny.

    a. Testing was an appropriate alternative that the City refused to consider as is evident in its initial denial letter. This is a pure issue of fact.

    b. Further, the COVID-19 vaccine never stopped the transmission of the variants occurring in 2021.[5] Studies and experience have shown that unlike every other disease in human history, being vaccinated against

---

[5] The multitude of peer reviewed sources at the least creates a material issue of genuine fact
https://www.thelancet.com/journals/laninf/article/PIIS1473-3099(21)00768-4/fulltext;
https://pmc.ncbi.nlm.nih.gov/articles/PMC8992234/; https://www.mdpi.com/2673-8112/3/10/103;
https://pmc.ncbi.nlm.nih.gov/articles/PMC9876028; https://pubmed.ncbi.nlm.nih.gov/39283431/;

7

>
> COVID-19 does not stop its transmission. Therefore, the City's basis to denying an accommodation is unreasonable and unfounded in in the record.
>
> c. In addition to the peer reviewed studies referenced below, and the conclusions of the bi-partisan Select Subcommittee on the Coronavirus Pandemic in addition to the averments in the complaint create a contested material issue of genuine fact.
>
> d.

59. Admit.

60. Admit.

61. Admit in part.

62. Admit in part.

63. Deny. There is no admissible evidence to support this claim.

64. Deny. There is no admissible evidence to support this claim.

65. Deny. There is no admissible evidence to support this claim.

66. Admit.

67. Deny.

68. Deny.

69. Admit.

70. Deny.

71. Admit

72. Deny. He was terminated because Defendant failed to accommodate him.

    a. The DOC received 648 requests for a religious accommodation (*see* Ex 6).

    b. It granted 1 *id.*

    c. It denied 359 *id.*

Dated: April 09, 2025

*/s/ Chad J. LaVeglia*

Law Office of Chad J. LaVeglia PLLC
Chad J. LaVeglia Esq.
350 Motor Parkway, Suite #308
Hauppauge, NY 11788
(631) 333-8478
www.cjlawny.com