Page 1

1          UNITED STATES DISTRICT COURT

2       FOR THE EASTERN DISTRICT OF NEW YORK

3  _____

4  DANIEL CHAVEZ,

5          Plaintiff,

6     v.                              Case No.

7  CITY OF NEW YORK, ERIC ADAMS,      1:23-cv-7754

8  and DAVID CHOKSHI,

9          Defendants.

10 _____

11          DEPOSITION OF BIJAN VAFEGH

12 DATE:           Thursday, January 30, 2025

13 TIME:           2:08 p.m.

14 LOCATION:       Remote Proceeding

15                 New York City Law Department

16                 100 Church Street, 6th Floor

17                 New York, NY 10007

18 REPORTED BY:    Steven Imbat

19 JOB NO.:        7142569

20

21

22

23

24

25

Page 2

1                    A P P E A R A N C E S

2    ON BEHALF OF PLAINTIFF DANIEL CHAVEZ:

3         CHAD J. LAVEGLIA, ESQUIRE (by videoconference)

4         Law Office of Chad J. LaVeglia PLLC

5         350 Motor Parkway, Suite 308

6         Hauppauge, NY 11788

7         claveglia@cjllaw.org

8         (631) 450-2468

9

10   ON BEHALF OF DEFENDANT CITY OF NEW YORK:

11        SHIVANI DAMERA, ESQUIRE (by videoconference)

12        New York City Law Department

13        100 Church Street, 4th Floor

14        New York, NY 10007

15        sdamera@law.nyc.gov

16        (212) 356-2444

17

18

19

20

21

22

23

24

25

1                      I N D E X

2    EXAMINATION:                              PAGE

3         By Mr. LaVeglia                        7

4

5                    E X H I B I T S

6    NO.              DESCRIPTION              PAGE

7    Exhibit 1        Reasonable Accommodation

8                     Request and Letter of

9                     Determination for Mr. Chavez    10

10   Exhibit 2        Log of Daniel Chavez's

11                    Accommodation Request          18

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1              B. VAFEGH

2          THE REPORTER:  Good afternoon.  My

3     name is Steven Imbat.  I'm the reporter

4     assigned by Veritext to take the record of

5     this proceeding.  We are now on the record

6     at 2:08 p.m.

7          This is the deposition of Bijan

8     Vafegh taken in the matter of Daniel

9     Chavez vs. the City of New York on

10     Thursday, January the 30th, 2024, at 100

11     Church Street, Sixth Floor, New York,

12     New York 10007.

13          I'm a notary authorized to take

14     acknowledgments and administer oaths in

15     New York.  Parties agree that I will swear

16     in the witness remotely.

17          Additionally, absent an objection on

18     the record before the witness is sworn,

19     all parties and the witness understand and

20     agree that any certified transcript

21     produced from the recording of this

22     proceeding:

23          - is intended for all uses permitted

24     under applicable procedural and

25     evidentiary rules and laws in the same

```
                                        Page 5
  1                    B. VAFEGH
  2        manner as a deposition recorded by
  3        stenographic means; and
  4            - shall constitute written
  5        stipulation of such.
  6            At this time, will our attorneys, not
  7        the witness, please identify yourselves
  8        for the record.  We'll start with
  9        Mr. LaVeglia, please.
 10            MR. LAVEGLIA:  Yep.  Chad LaVeglia
 11        for Daniel Chavez, Plaintiff.
 12            THE REPORTER:  Thank you.
 13            Ms. Damera, please.
 14            MS. DAMERA:  Yep.  Shivani Damera
 15        representing the City of New York in this
 16        matter.
 17            THE REPORTER:  Thank you very much,
 18        Counsel.
 19            Hearing no objection, I'll now swear
 20        in our witness.
 21            Mr. Vafegh, please raise your right
 22        hand.
 23   //
 24   //
 25   //
```

```
                                              Page 6
 1                         B. VAFEGH
 2   WHEREUPON,
 3                     BIJAN VAFEGH,
 4   called as a witness and having been first
 5   duly sworn to tell the truth, the whole
 6   truth, and nothing but the truth, was
 7   examined and testified as follows:
 8            THE REPORTER:  Thank you very much.
 9            Counsel, you may begin.
10            MR. LAVEGLIA:  Okay.  Just before we
11       begin, I have two exhibits that I want.
12       How do I get that to you?
13            THE REPORTER:  Counsel, I'm not sure.
14       Are you able to share screen on your end?
15       Thank you for letting me know.  I -- I
16       just allowed you, though.
17            If not, you may email those exhibits
18       to me, and then I can also share it on my
19       end.  But it may take some time, if you
20       want us to go off the record at the
21       moment.
22            MR. LAVEGLIA:  Yeah.  I didn't want
23       to interrupt you before, so.
24            THE REPORTER:  No.  That's fine.
25       That's fine.  Yeah.  No problem.  For now,
```

```
                                          Page 7
 1                    B. VAFEGH

 2         we'll go off the record momentarily at

 3         2:10 p.m.

 4              (Off the record.)

 5              THE REPORTER:  All right.  It is

 6         2:13 p.m.  We are back on the record.

 7              Counsel, you may continue.

 8              MR. LAVEGLIA:  All right.  Thank you.

 9                   EXAMINATION

10   BY MR. LAVEGLIA:

11         Q    Sorry for the delay.  Hi, Mr.

12   Vafegh.  My name is Chad LaVeglia.  I

13   represent Plaintiff in the matter of

14   Daniel Chavez v. the City of New York.

15   I'll be asking you some questions.

16              If at any time you don't

17   understand or need me to rephrase, please

18   let me know.  Or if you need a break,

19   please let us know as well.  And if you

20   don't understand, again, just let me know.

21   We don't want you to speculate or guess.

22   Okay?  Do you understand?

23         A    Yes.

24         Q    Okay.  Where are you currently

25   employed?
```

```
                                    Page 8
 1                    B. VAFEGH
 2        A     The New York City Law
 3   Department.
 4        Q     And where were you before that?
 5        A     Immediately before the Law
 6   Department, I was in Rockland County,
 7   employed by Rockland County.
 8        Q     Okay.  What were you doing in
 9   Rockland County?
10        A     I oversaw an EEO office, for the
11   county of Rockland.
12        Q     Okay.  Let's go back to your
13   education.  Where'd you go to law school?
14        A     The City University of New York.
15        Q     What year did you graduate?
16        A     2011.
17        Q     So before going into the EEO
18   office, in Rockland County, did you
19   receive any specialized training?
20        A     Specialized training?  How?
21        Q     Well, what were your job
22   responsibilities in Rockland County?
23        A     I oversaw EEO investigations,
24   and I processed reasonable accommodation
25   requests.
```

```
                                        Page 9
 1                     B.  VAFEGH
 2        Q     So did you receive any training
 3   in that area?
 4        A     I've received quite a lot of
 5   training for EEO investigations.  Yes.
 6        Q     Where did you receive that
 7   training?
 8        A     Through various providers.
 9   Through CLEs, through PLI, through DOC,
10   some -- some my prior employers put me
11   through some training.  Additionally, at
12   CUNY, I was in the Civil Rights Clinic, so
13   I studied Title VII 1983 and Civil Rights
14   statutes.  So I've received a lot of
15   training in the realm of EEO.
16        Q     Okay.  So let's now fast forward
17   to October of 2021.  Where were you
18   working at that time?
19        A     I was at the Department of
20   Correction, in their EEO office.
21        Q     What was your official title?
22        A     I was the disability rights
23   coordinator.
24        Q     So as a disability rights
25   coordinator, what was your typical job
```

Page 10

                              B. VAFEGH

 1

 2    functions?

 3        A    I worked on reasonable

 4    accommodation requests.  I reviewed the

 5    request forms, and I worked on trying to

 6    get accommodations in place.  And I issued

 7    determinations on those accommodation

 8    requests.

 9        Q    Okay.  Did you come across a

10    request from someone named Daniel Chavez?

11        A    I believe so.  Yes.

12            MR. LAVEGLIA:  Okay.  Could we show

13        the witness what should be marked as

14        Plaintiff's Exhibit 1?

15            (Plaintiff Exhibit 1 was marked

16            for identification.)

17            THE REPORTER:  Certainly, Counsel.

18        Standby.

19            MR. LAVEGLIA:  Thank you.

20            THE REPORTER:  So, Counsel, as you

21        mentioned, these are four pages.  Just

22        please advise which page I should go.

23            MR. LAVEGLIA:  The first two.

24            THE REPORTER:  First two.  Okay.

25        This is the first of the two.

```
                                          Page 11
 1                    B. VAFEGH
 2            MR. LAVEGLIA:  It's page 1.  Yep.  If
 3        you could just scroll down to the second
 4        page, please.
 5            THE REPORTER:  Certainly, Counsel.
 6            MR. LAVEGLIA:  Thank you.
 7            THE REPORTER:  You're welcome.
 8            MR. LAVEGLIA:  All right.  Perfect.
 9   BY MR. LAVEGLIA:
10        Q    Okay.  Mr. Vafegh, do you see
11   your name on there?
12        A    I do.
13        Q    If you're able to see the whole
14   thing, can you confirm that you wrote this
15   letter to Mr. Chavez?
16        A    Yeah.  I believe so.  It has my
17   signature at the bottom.  That is my
18   handwriting, so.
19        MR. LAVEGLIA:  Okay.  And, Steven, if
20   you please just go to the first page just
21   to give the witness a little more context
22   here.
23        THE REPORTER:  Sure, Counsel.  Then,
24   instead -- okay.  In terms of the -- of
25   the font, do you need me to zoom?
```

```
                                         Page 12
 1                    B. VAFEGH
 2            MR. LAVEGLIA:  I can see.
 3            Mr. Vafegh, can you see it?
 4            THE WITNESS:  It's a little small,
 5       but I can see it.
 6            THE REPORTER:  I can make it a little
 7       bigger, Counsel.  Ninety percent.  Just
 8       please advise if that's okay.
 9            THE WITNESS:  I can see it.
10   BY MR. LAVEGLIA:
11       Q    Okay.  So in your position as a
12   disability rights coordinator, during
13   COVID, did you review requests for
14   religious accommodations?
15       A    Yes.
16       Q    Did you review them by yourself
17   or with anyone else?
18       A    We -- we received 2,000 or more
19   requests.  I reviewed the vast majority,
20   but there were a couple of other people in
21   the office that assisted.
22       Q    Okay.  And what were the names
23   of the folks that assisted you?
24       A    The assistant commissioner, her
25   name was Elizabeth Lundi.  She reviewed a
```

Page 13

                              B. VAFEGH

1

2    number of them.  The -- there was a

3    reasonable accommodation.  There was an

4    attorney that worked under me.

5             One of my direct reports, Nancy

6    Bleakley, she reviewed some of them.  And

7    there was a deputy in the EE office.

8    Florina Getman, I believe she reviewed

9    some of them.

10        Q    Okay.  So on this specific

11   instance for Mr. Chavez, did you come to a

12   decision as to his request for an

13   accommodation?

14        A    It looks like I did, and I

15   signed the letter of determination.  So

16   yeah.

17        Q    So you denied his accommodation

18   request; right?

19        A    Correct.

20        Q    And based on your letter, that

21   was because you determined that it would

22   be an undue hardship to accommodate him?

23             MS. DAMERA:  Objection.

24             You can answer.

25             THE WITNESS:  Yeah.  Specifically,

```
                                              Page 14
 1                     B. VAFEGH
 2        there -- the determination, from what I
 3        can see here, there -- I am looking at it.
 4            Yeah.  The Department of Correction
 5        was uniquely situated, as far as city
 6        agencies go, in that the agency was
 7        responsible for the care, custody, and
 8        control of a detained population, in
 9        really confined spaces.
10            So there's a subset of the undue
11        hardship argument called direct threat.
12        So yeah, I -- I denied based on the fact
13        that not being vaccinated would be a
14        direct threat and would kind of hamper the
15        agency's mission of the care, custody,
16        control of individuals.
17            So yes, it was a direct threat
18        analysis, under undue hardship, was the
19        basis of my -- my determination.
20   BY MR. LAVEGLIA:
21        Q    Okay.  Did you consult with any
22   doctors or medical experts before coming
23   to this determination?
24            MS. DAMERA:  Objection.
25            You can answer.
```

Page 15

1                        B. VAFEGH

2              THE WITNESS:  I -- there was staff at

3         HMD.  I can't recall if I specifically

4         consulted about this one, but as far as

5         vaccinations went, DOC was also uniquely

6         situated in that they had a health

7         division with doctors.

8              And I do believe that I spoke to them

9         about some of these requests.  I do not

10        recall specifically about this one, but --

11   BY MR. LAVEGLIA:

12        Q    And it's hard to remember every

13   specific one because, like you said, there

14   was almost 2,000; right?

15        A    Yeah.

16        Q    Did you have any opportunity to

17   speak to Mr. Chavez about maybe

18   alternatives?

19              MS. DAMERA:  Objection.

20              You can answer.

21              THE WITNESS:  I don't recall if I

22        spoke about alternatives.  I don't really

23        know what kind of alternatives there would

24        be, for vaccination exemption requests.

25        Yeah.  I can't recall if I spoke about

```
                                          Page 16
 1                      B. VAFEGH
 2        alternatives.
 3   BY MR. LAVEGLIA:
 4        Q    And you say you don't know if
 5   there would be any because -- and based on
 6   your letter, masking and testing would be
 7   insufficient; correct?
 8             MS. DAMERA:  Objection.
 9             You can answer.
10             THE WITNESS:  Yeah.  I would say
11        masking and testing would probably not be
12        sufficient, given the nature of the agency
13        and the fact that we had detained
14        individuals in confined spaces.  I don't
15        know if masking and testing would be a
16        sufficient alternative.
17   BY MR. LAVEGLIA:
18        Q    Okay.  I'd like to just
19   backtrack a little bit.  How did the
20   process work interoffice, when you were
21   handling these requests?
22        A    I think I need clarification.
23        Q    Sure.  So when you came into
24   work, did you just have a pile of files
25   there?  Did it come in through e-mails?
```

                              B. VAFEGH

1    How did you receive these requests?  And

2    then what steps did you take, once they

3    were received?

4         A     Sure.  They came in various

5    ways.  It could have been through

6    interoffice mail.  It could have been

7    through e-mail sent directly to me.  It

8    could have been through snail mail that

9    came into the office in, like, generally.

10   But, yeah, I went through --

11   we -- we would set up a folder.

12            Once we received the request, we

13   would put certain information in there --

14   just where the -- the individual worked,

15   who their supervisors were.  And then,

16   yeah, I went through -- there were piles

17   of folders all related to the vaccine.  I

18   think we alphabetized them, and I went

19   through them as much -- as best I could.

20            I reviewed every, single one.

21   I -- all the supporting documentation.  I

22   would reach out to supervisors with any

23   questions I had, and then I would write

24   the determination, based on what I found.

```
                                        Page 18
 1                    B. VAFEGH
 2      Q    Okay.  Did you keep a log for
 3   each individual?
 4            MS. DAMERA:  Objection.
 5            You can answer.
 6            THE WITNESS:  Yeah.  We would
 7        write -- we had on the -- on the folders
 8        there would be a -- a actual sheet for
 9        reasonable accommodation actions taken,
10        so.
11   BY MR. LAVEGLIA:
12      Q    Okay.  And did you keep an
13   electronic copy of that as well?
14            MS. DAMERA:  Objection.
15            You can answer.
16            THE WITNESS:  I think sometimes there
17        were electronic copies kept -- kept.  I do
18        not recall in this -- in this matter.
19            MR. LAVEGLIA:  Okay.  Steven, if we
20        could please show the witness what should
21        be Plaintiff's Exhibit 2?
22            (Plaintiff Exhibit 2 was marked
23            for identification.)
24            THE REPORTER:  Certainly, Counsel.
25        Just give me a moment.  I think -- yeah,
```

                              B. VAFEGH

1         it's -- let's --

2              MR. LAVEGLIA:  That's it.

3              THE REPORTER:  Horizontal.  Is that a

4         little better?  I know I made it a little

5         smaller, so you can see entirely across

6         this.  Please let me know.

7              MR. LAVEGLIA:  That's too tiny.

8              THE REPORTER:  Too tiny.

9              MR. LAVEGLIA:  Thank you.

10             THE REPORTER:  Yeah.  I can -- let me

11        zoom in.  Counsel --- yeah.  Is that --

12        oh, sorry.  Sorry.  I'm operating under

13        one screen.  I can just, you know, scroll

14        it to the right, if you need the

15        information to the right.

16             MR. LAVEGLIA:  Okay.  Thank you.

17   BY MR. LAVEGLIA:

18        Q    All right.  Mr. Vafegh, to the

19   best of your eyes' ability, does that look

20   like the type of log that was kept for

21   individuals?

22        A    This looks like the log of all

23   requests that were kept.  We had a bunch

24   of different tracking spreadsheets.  My --

Page 20

                              B. VAFEGH
1
2    this -- this would not be a log, in an
3    individual accommodation folder.
4         Q    Okay.  I guess you can't really
5    see it that well there, in the subject
6    column.
7              THE REPORTER:  I can zoom in,
8         Counsel, if you -- if you need me to be
9         specific to the subject column.
10             MR. LAVEGLIA:  Yes, please.
11             THE REPORTER:  Okay.  Then let me
12        just scroll down.  Is that better,
13        Counsel?  Like, I raised it 150.
14             MR. LAVEGLIA:  Yeah.  Okay.  Yeah,
15        that's --
16   BY MR. LAVEGLIA:
17        Q    Can you see that each request is
18   for Daniel Chavez?
19        A    Oh.  Okay.  I can see that now.
20        Q    Okay.  So does this look like
21   it's just the log sheet for Mr. Chavez?
22        A    I don't -- this is not --
23   would -- would be in the folder.  I don't
24   know where this came from.
25        Q    Okay.  Would it be possible that

```
                                                    Page 21
 1                        B. VAFEGH
 2    this came from the appeals part of the
 3    process?
 4         A    The -- it could be that it came
 5    from the appeal part of the process.  But
 6    the way an accommodation appeal works is,
 7    well, they're de novo, and I wouldn't be
 8    necessarily involved in -- in appeal
 9    determinations.  I issued the original
10    explanation.
11         Q    Right.  So would Elizabeth Lundi
12    be involved in the de novo determination?
13              MS. DAMERA:  Objection.
14              You can answer.
15              THE WITNESS:  I think there was a --
16         I don't -- this is what, nearly four or
17         five years ago.  Generally, the assistant
18         commissioner was not involved in the
19         appeal determination.  It usually went to
20         a deputy commissioner there.
21              I think for the vaccine-specific
22         requests, they may have set up an external
23         appeal -- appeal process to go outside of
24         DOC, for review.  I think that's what
25         happened in the -- the majority of
```

Page 22

1                          B.  VAFEGH

2        those -- those accommodation requests.

3   BY MR. LAVEGLIA:

4        Q    Okay.  Did you work with someone

5   named Eric Eichenholtz?

6             MS. DAMERA:  Objection.

7             You can answer.

8             THE WITNESS:  Eric, at the time, was

9        the head of the -- he was the chief of

10       labor and employment at the Law

11       Department.  I had, I think, some

12       conversations with him early on in the

13       process.  Did I work with him on specific

14       accommodation requests?  I do not recall

15       doing so.

16  BY MR. LAVEGLIA:

17       Q    Okay.  Do you know what his

18  involvement in this process was?  Overall?

19       A    He may have been one of the

20  reviewers that reviewed the appeals.  Like

21  I said, they went outside of the

22  Department of Correction, I believe, for

23  the vaccines.

24       Q    Okay.  How about David Rozen?

25  Did you work with him?

```
                                        Page 23

 1                         B. VAFEGH
 2              MS. DAMERA:  Objection.
 3              You can answer.
 4              THE WITNESS:  I don't -- I don't know
 5         who that is.
 6    BY MR. LAVEGLIA:
 7         Q    Do you know, what does CCHR
 8    stand for?  Do you know?
 9              MS. DAMERA:  Objection.
10              You can answer.
11              THE WITNESS:  Yeah.  It's the City's
12         Commission on Human Rights.
13    BY MR. LAVEGLIA:
14         Q    Okay.  Did they have any
15    involvement in the appeals process?
16         A    I do not recall.  They may have
17    been one of the outside reviewing
18    agencies.
19         Q    Okay.  Would it be fair to say
20    that nobody but yourself was involved in
21    the specific determination of denying Mr.
22    Chavez's request?  Is that fair?
23              MS. DAMERA:  Objection.  Okay.
24         Objection.
25              You can answer.
```

```
                                        Page 24

 1                      B.  VAFEGH

 2              THE  WITNESS:    I  was  the  one  who

 3        issued  the  --  the  original  determination.

 4        So  in  denying  the  original  request  that

 5        was  made.

 6  BY  MR.  LAVEGLIA:

 7        Q     Okay.    And  DCAS,  what  does  that

 8  stand  for?

 9        A     DCAS,  the  Department  of  Citywide

10  Administrative  Services.

11        Q     Okay.    So  were  they  involved  in

12  the  initial  determination  process?

13              MS.  DAMERA:    Objection.

14              You  can  answer.

15              THE  WITNESS:    I  don't  think  DCAS  was

16        at  all  involved  in  the  original

17        determination  that  I  issued.    I  believe

18        they  may  have  been  one  of  those  external

19        oversight  organizations  that  reviewed  the

20        appeals.

21  BY  MR.  LAVEGLIA:

22        Q     Okay.    Great.    So  before  you

23  started  getting,  you  know,  the  2,000

24  requests,  did  the  City  offer  any  kind  of

25  training  for  you?
```

```
                                        Page 25

 1                      B. VAFEGH

 2            MS. DAMERA:  Objection.

 3            You can answer.

 4            THE WITNESS:  About the accommodation

 5       requests related to the vaccine?  There

 6       was not much training and/or guidance.

 7  BY MR. LAVEGLIA:

 8       Q    Okay.  So you had to basically

 9  then draw on what you already knew; right?

10       A    Yes.

11       Q    Okay.  And I just want to

12  clarify, for Mr. Chavez, you didn't deny

13  his request based on his religious

14  beliefs; right?

15            MS. DAMERA:  Objection.

16            You can answer.

17            THE WITNESS:  From the part that I

18       reviewed on the letter, being that this

19       was four-plus years ago, I believe the

20       denial was primarily focused on the fact

21       that it was an undue hardship, with

22       regards to the agency's mission of care,

23       custody, and control of inmates.

24            So it was more of the direct threat

25       analysis and undue hardship.
```

```
                                                    Page 26
 1                          B.  VAFEGH
 2    BY MR. LAVEGLIA:
 3         Q    Okay.  Do you want to take a
 4    look at the letter again, just to be
 5    clear?
 6         A    Sure.
 7              MR. LAVEGLIA:  If you could, Steven,
 8         show him Exhibit 1.
 9              THE REPORTER:  Exhibit 1?  Sure,
10         Counsel.  Just give me a moment.  Let
11         me -- sorry.  Let me just move to the
12         right.
13              Is that a better view, everyone?
14              MR. LAVEGLIA:  Yeah.
15              THE WITNESS:  Yes, I can see it.
16              Yeah.  I don't see any mention of
17         religious beliefs other than the "due to
18         (his) Christian faith."  I don't see
19         the -- the determination being based on
20         religious beliefs.
21    BY MR. LAVEGLIA:
22         Q    Okay.  And if it was based on
23    the sincerity of his religious beliefs,
24    would you have put that in the letter?
25              MS. DAMERA:  Objection.
```

```
                                              Page 27
 1                      B. VAFEGH
 2           You can answer.
 3           THE WITNESS:  If I had reason to
 4      believe that the religious beliefs were
 5      insincere, I might put it in a letter.
 6      Yes.  It's kind of a hard thing to make
 7      that determination though.
 8           Religious beliefs are deeply
 9      personal, and I don't know how or what
10      information I would have to be able to
11      challenge someone's religious beliefs, so.
12  BY MR. LAVEGLIA:
13      Q    Right.  And plus, it gets even
14  more nuanced with the amount of different
15  religious religions out there; right?
16      A    Yeah.
17           MS. DAMERA:  Objection.
18           You can answer.
19           THE WITNESS:  I -- I can see that
20      being the case.  Yes.
21           MR. LAVEGLIA:  Okay.  I have no
22      further questions.  Thank you, Mr. Vafegh.
23           THE REPORTER:  Okay.
24           THE WITNESS:  You're welcome.
25           THE REPORTER:  Thank you, Counsel.
```

```
                                                Page 28

 1                        B. VAFEGH

 2              Ms. Damera, do you have any questions

 3        for your witness?

 4              MS. DAMERA:  No.  I don't have any

 5        questions at this time.

 6              THE REPORTER:  Okay.  Thank you very

 7        much.

 8              Prior to us closing the record,

 9        Counsel LaVeglia, you'll receive the

10        original of this transcript.  Would you

11        want expedited or standard delivery?

12              MR. LAVEGLIA:  Standard is fine.

13              THE REPORTER:  Perfect.  Thank you.

14        Do you plan to provide a copy to Defense

15        Counsel?

16              MR. LAVEGLIA:  I do.

17              THE REPORTER:  Okay.  Perfect.

18              Thank you very much, everyone.  Just

19        standby for possible spellings.  But for

20        now, this concludes today's deposition.

21        We're off the record at 2:33 p.m.

22

23              (Whereupon, at 2:33 p.m., the

24              proceeding was concluded.)

25
```

Page 29

1                CERTIFICATE OF DEPOSITION OFFICER

2        I, STEVEN IMBAT, the officer before whom the

3    foregoing proceedings were taken, do hereby certify that

4    any witness(es) in the foregoing proceedings, prior to

5    testifying, were duly sworn; that the proceedings were

6    recorded by me and thereafter reduced to typewriting by a

7    qualified transcriptionist; that said digital audio

8    recording of said proceedings are a true and accurate

9    record to the best of my knowledge, skills, and ability;

10   that I am neither counsel for, related to, nor employed by

11   any of the parties to the action in which this was taken;

12   and, further, that I am not a relative or employee of any

13   counsel or attorney employed by the parties hereto, nor

14   financially or otherwise interested in the outcome of this

15   action.

16                                          STEVEN IMBAT

17                              Notary Public in and for the

18                                      State of New York

19

20

21

22

23

24

25

Page 30

1              CERTIFICATE OF TRANSCRIBER

2          I, KIMBERLY WYLIE, do hereby certify that this

3    transcript was prepared from the digital audio recording of

4    the foregoing proceeding, that said transcript is a true

5    and accurate record of the proceedings to the best of my

6    knowledge, skills, and ability; that I am neither counsel

7    for, related to, nor employed by any of the parties to the

8    action in which this was taken; and, further, that I am not

9    a relative or employee of any counsel or attorney employed

10   by the parties hereto, nor financially or otherwise

11   interested in the outcome of this action.

12

13

14                                      KIMBERLY WYLIE

15

16

17

18

19

20

21

22

23

24

25

Page 31

1  Chavez, Daniel v. City Of New York, Et Al.

2  Bijan Vafegh (#7142569)

3                   E R R A T A   S H E E T

4  PAGE_____ LINE_____ CHANGE_____

5  _____

6  REASON_____

7  PAGE_____ LINE_____ CHANGE_____

8  _____

9  REASON_____

10 PAGE_____ LINE_____ CHANGE_____

11 _____

12 REASON_____

13 PAGE_____ LINE_____ CHANGE_____

14 _____

15 REASON_____

16 PAGE_____ LINE_____ CHANGE_____

17 _____

18 REASON_____

19 PAGE_____ LINE_____ CHANGE_____

20 _____

21 REASON_____

22

23 _____    _____

24 Bijan Vafegh                                  Date

25

Page 32

1    Chavez, Daniel v. City Of New York, Et Al.

2    Bijan Vafegh (#7142569)

3                    ACKNOWLEDGEMENT OF DEPONENT

4        I, Bijan Vafegh, do hereby declare that I

5    have read the foregoing transcript, I have made any

6    corrections, additions, or changes I deemed necessary as

7    noted above to be appended hereto, and that the same is

8    a true, correct and complete transcript of the testimony

9    given by me.

10

11   _____    _____

12   Bijan Vafegh                    Date

13   *If notary is required

14                        SUBSCRIBED AND SWORN TO BEFORE ME THIS

15                        _____ DAY OF _____, 20___.

16

17

18                    _____

19                    NOTARY PUBLIC

20

21

22

23

24

25

**[1 - attorney]**                                                                                          Page 1

| 1 |
| --- |
| **1**  3:7 10:14,15 11:2 26:8,9 |
| **10**  3:9 |
| **100**  1:16 2:13 4:10 |
| **10007**  1:17 2:14 4:12 |
| **11788**  2:6 |
| **150**  20:13 |
| **18**  3:11 |
| **1983**  9:13 |
| **1:23**  1:7 |

| 2 |
| --- |
| **2**  3:10 18:21,22 |
| **2,000**  12:18 15:14 24:23 |
| **20**  32:15 |
| **2011**  8:16 |
| **2021**  9:17 |
| **2024**  4:10 |
| **2025**  1:12 |
| **212**  2:16 |
| **2:08**  1:13 4:6 |
| **2:10**  7:3 |
| **2:13**  7:6 |
| **2:33**  28:21,23 |

| 3 |
| --- |
| **30**  1:12 |
| **30182**  29:15 |
| **308**  2:5 |

**30th**  4:10
**34144**  30:13
**350**  2:5
**356-2444**  2:16

| 4 |
| --- |
| **450-2468**  2:8 |
| **4th**  2:13 |

| 6 |
| --- |
| **631**  2:8 |
| **6th**  1:16 |

| 7 |
| --- |
| **7**  3:3 |
| **7142569**  1:19 31:2 32:2 |
| **7754**  1:7 |

| a |
| --- |
| **ability**  19:20 29:9 30:6 |
| **able**  6:14 11:13 27:10 |
| **above**  32:7 |
| **absent**  4:17 |
| **accommodate** 13:22 |
| **accommodati...** 3:7,11 8:24 10:4,7 13:3,13 13:17 18:9 20:3 21:6 22:2 22:14 25:4 |
| **accommodati...** 10:6 12:14 |

**accurate**  29:8 30:5
**acknowledge...** 32:3
**acknowledg...** 4:14
**action**  29:11,15 30:8,11
**actions**  18:9
**actual**  18:8
**adams**  1:7
**additionally** 4:17 9:11
**additions**  32:6
**administer** 4:14
**administrative** 24:10
**advise**  10:22 12:8
**afternoon**  4:2
**agencies**  14:6 23:18
**agency**  14:6 16:12
**agency's**  14:15 25:22
**ago**  21:17 25:19
**agree**  4:15,20
**al**  31:1 32:1
**allowed**  6:16
**alphabetized** 17:19

**alternative** 16:16
**alternatives** 15:18,22,23 16:2
**amount**  27:14
**analysis**  14:18 25:25
**answer**  13:24 14:25 15:20 16:9 18:5,15 21:14 22:7 23:3,10,25 24:14 25:3,16 27:2,18
**appeal**  21:5,6,8 21:19,23,23
**appeals**  21:2 22:20 23:15 24:20
**appended**  32:7
**applicable**  4:24
**area**  9:3
**argument** 14:11
**asking**  7:15
**assigned**  4:4
**assistant**  12:24 21:17
**assisted**  12:21 12:23
**attorney**  13:4 29:13 30:9

[attorneys - correct]                                                                Page 2

**attorneys** 5:6
**audio** 29:7 30:3
**authorized** 4:13

**b**

**b** 3:5 4:1 5:1
  6:1 7:1 8:1 9:1
  10:1 11:1 12:1
  13:1 14:1 15:1
  16:1 17:1 18:1
  19:1 20:1 21:1
  22:1 23:1 24:1
  25:1 26:1 27:1
  28:1
**back** 7:6 8:12
**backtrack** 16:19
**based** 13:20
  14:12 16:5
  17:25 25:13
  26:19,22
**basically** 25:8
**basis** 14:19
**behalf** 2:2,10
**beliefs** 25:14
  26:17,20,23
  27:4,8,11
**believe** 10:11
  11:16 13:8
  15:8 22:22
  24:17 25:19
  27:4

**best** 17:20
  19:20 29:9
  30:5
**better** 19:5
  20:12 26:13
**bigger** 12:7
**bijan** 1:11 4:7
  6:3 31:2,24
  32:2,4,12
**bit** 16:19
**bleakley** 13:6
**bottom** 11:17
**break** 7:18
**bunch** 19:24

**c**

**c** 2:1
**called** 6:4 14:11
**care** 14:7,15
  25:22
**case** 1:6 27:20
**cchr** 23:7
**certain** 17:14
**certainly** 10:17
  11:5 18:24
**certificate** 29:1
  30:1
**certified** 4:20
**certify** 29:3
  30:2
**chad** 2:3,4 5:10
  7:12
**challenge** 27:11

**change** 31:4,7
  31:10,13,16,19
**changes** 32:6
**chavez** 1:4 2:2
  3:9 4:9 5:11
  7:14 10:10
  11:15 13:11
  15:17 20:18,21
  25:12 31:1
  32:1
**chavez's** 3:10
  23:22
**chief** 22:9
**chokshi** 1:8
**christian** 26:18
**church** 1:16
  2:13 4:11
**city** 1:7,15 2:10
  2:12 4:9 5:15
  7:14 8:2,14
  14:5 24:24
  31:1 32:1
**city's** 23:11
**citywide** 24:9
**civil** 9:12,13
**cjllaw.org** 2:7
**clarification** 16:22
**clarify** 25:12
**claveglia** 2:7
**clear** 26:5
**cles** 9:9
**clinic** 9:12

**closing** 28:8
**column** 20:6,9
**come** 10:9
  13:11 16:25
**coming** 14:22
**commission** 23:12
**commissioner** 12:24 21:18,20
**complete** 32:8
**concluded** 28:24
**concludes** 28:20
**confined** 14:9
  16:14
**confirm** 11:14
**constitute** 5:4
**consult** 14:21
**consulted** 15:4
**context** 11:21
**continue** 7:7
**control** 14:8,16
  25:23
**conversations** 22:12
**coordinator** 9:23,25 12:12
**copies** 18:17
**copy** 18:13
  28:14
**correct** 13:19
  16:7 32:8

[correction - es]                                                                    Page 3

correction  9:20
  14:4 22:22
corrections
  32:6
counsel  5:18
  6:9,13 7:7
  10:17,20 11:5
  11:23 12:7
  18:24 19:12
  20:8,13 26:10
  27:25 28:9,15
  29:10,13 30:6
  30:9
county  8:6,7,9
  8:11,18,22
couple  12:20
court  1:1
covid  12:13
cuny  9:12
currently  7:24
custody  14:7
  14:15 25:23
cv  1:7

**d**

d  3:1
damera  2:11
  5:13,14,14
  13:23 14:24
  15:19 16:8
  18:4,14 21:13
  22:6 23:2,9,23
  24:13 25:2,15
  26:25 27:17

28:2,4
daniel  1:4 2:2
  3:10 4:8 5:11
  7:14 10:10
  20:18 31:1
  32:1
date  1:12 31:24
  32:12
david  1:8 22:24
day  32:15
dcas  24:7,9,15
de  21:7,12
decision  13:12
declare  32:4
deemed  32:6
deeply  27:8
defendant  2:10
defendants  1:9
defense  28:14
delay  7:11
delivery  28:11
denial  25:20
denied  13:17
  14:12
deny  25:12
denying  23:21
  24:4
department
  1:15 2:12 8:3,6
  9:19 14:4
  22:11,22 24:9
deponent  32:3
deposition  1:11
  4:7 5:2 28:20

29:1
deputy  13:7
  21:20
description  3:6
detained  14:8
  16:13
determination
  3:9 13:15 14:2
  14:19,23 17:25
  21:12,19 23:21
  24:3,12,17
  26:19 27:7
determinations
  10:7 21:9
determined
  13:21
different  19:25
  27:14
digital  29:7
  30:3
direct  13:5
  14:11,14,17
  25:24
directly  17:8
disability  9:22
  9:24 12:12
district  1:1,2
division  15:7
doc  9:9 15:5
  21:24
doctors  14:22
  15:7
documentation
  17:22

doing  8:8 22:15
draw  25:9
due  26:17
duly  6:5 29:5

**e**

e  2:1,1 3:1,5
  16:25 17:8
  31:3,3,3
early  22:12
eastern  1:2
education  8:13
ee  13:7
eeo  8:10,17,23
  9:5,15,20
eichenholtz
  22:5
electronic
  18:13,17
elizabeth  12:25
  21:11
email  6:17
employed  7:25
  8:7 29:10,13
  30:7,9
employee  29:12
  30:9
employers  9:10
employment
  22:10
entirely  19:6
eric  1:7 22:5,8
es  29:4

**esquire**  2:3,11
**et**  31:1 32:1
**evidentiary**
  4:25
**examination**
  3:2 7:9
**examined**  6:7
**exemption**
  15:24
**exhibit**  3:7,10
  10:14,15 18:21
  18:22 26:8,9
**exhibits**  6:11
  6:17
**expedited**
  28:11
**experts**  14:22
**explanation**
  21:10
**external**  21:22
  24:18
**eyes**  19:20

**f**

**fact**  14:12
  16:13 25:20
**fair**  23:19,22
**faith**  26:18
**far**  14:5 15:4
**fast**  9:16
**files**  16:24
**financially**
  29:14 30:10

**fine**  6:24,25
  28:12
**first**  6:4 10:23
  10:24,25 11:20
**five**  21:17
**floor**  1:16 2:13
  4:11
**florina**  13:8
**focused**  25:20
**folder**  17:12
  20:3,23
**folders**  17:18
  18:7
**folks**  12:23
**follows**  6:7
**font**  11:25
**foregoing**  29:3
  29:4 30:4 32:5
**forms**  10:5
**forward**  9:16
**found**  17:25
**four**  10:21
  21:16 25:19
**functions**  10:2
**further**  27:22
  29:12 30:8

**g**

**generally**  17:10
  21:17
**getman**  13:8
**getting**  24:23
**give**  11:21
  18:25 26:10

**given**  16:12
  32:9
**go**  6:20 7:2
  8:12,13 10:22
  11:20 14:6
  21:23
**going**  8:17
**good**  4:2
**graduate**  8:15
**great**  24:22
**guess**  7:21 20:4
**guidance**  25:6

**h**

**h**  3:5 31:3
**hamper**  14:14
**hand**  5:22
**handling**  16:21
**handwriting**
  11:18
**happened**
  21:25
**hard**  15:12
  27:6
**hardship**  13:22
  14:11,18 25:21
  25:25
**hauppauge**  2:6
**head**  22:9
**health**  15:6
**hearing**  5:19
**hereto**  29:13
  30:10 32:7

**hi**  7:11
**hmd**  15:3
**horizontal**  19:4
**human**  23:12

**i**

**identification**
  10:16 18:23
**identify**  5:7
**imbat**  1:18 4:3
  29:2,16
**immediately**
  8:5
**individual**
  17:15 18:3
  20:3
**individuals**
  14:16 16:14
  19:22
**information**
  17:14 19:16
  27:10
**initial**  24:12
**inmates**  25:23
**insincere**  27:5
**instance**  13:11
**insufficient**
  16:7
**intended**  4:23
**interested**
  29:14 30:11
**interoffice**
  16:20 17:7

**[interrupt - new]**

**interrupt** 6:23
**investigations**
  8:23 9:5
**involved** 21:8
  21:12,18 23:20
  24:11,16
**involvement**
  22:18 23:15
**issued** 10:6
  21:9 24:3,17

**j**

**j** 2:3,4
**january** 1:12
  4:10
**job** 1:19 8:21
  9:25

**k**

**keep** 18:2,12
**kept** 18:17,17
  19:21,24
**kimberly** 30:2
  30:14
**kind** 14:14
  15:23 24:24
  27:6
**knew** 25:9
**know** 6:15 7:18
  7:19,20 15:23
  16:4,15 19:5,7
  19:14 20:24
  22:17 23:4,7,8
  24:23 27:9

**knowledge**
  29:9 30:6

**l**

**labor** 22:10
**laveglia** 2:3,4
  3:3 5:9,10,10
  6:10,22 7:8,10
  7:12 10:12,19
  10:23 11:2,6,8
  11:9,19 12:2
  12:10 14:20
  15:11 16:3,17
  18:11,19 19:3
  19:8,10,17,18
  20:10,14,16
  22:3,16 23:6
  23:13 24:6,21
  25:7 26:2,7,14
  26:21 27:12,21
  28:9,12,16
**law** 1:15 2:4,12
  8:2,5,13 22:10
**law.nyc.gov**
  2:15
**laws** 4:25
**letter** 3:8 11:15
  13:15,20 16:6
  25:18 26:4,24
  27:5
**letting** 6:15
**line** 31:4,7,10
  31:13,16,19

**little** 11:21 12:4
  12:6 16:19
  19:5,5
**location** 1:14
**log** 3:10 18:2
  19:21,23 20:2
  20:21
**look** 19:20
  20:20 26:4
**looking** 14:3
**looks** 13:14
  19:23
**lot** 9:4,14
**lundi** 12:25
  21:11

**m**

**made** 19:5 24:5
  32:5
**mail** 17:7,8,9
**mails** 16:25
**majority** 12:19
  21:25
**make** 12:6 27:6
**manner** 5:2
**marked** 10:13
  10:15 18:22
**masking** 16:6
  16:11,15
**matter** 4:8 5:16
  7:13 18:18
**means** 5:3
**medical** 14:22

**mention** 26:16
**mentioned**
  10:21
**mission** 14:15
  25:22
**moment** 6:21
  18:25 26:10
**momentarily**
  7:2
**motor** 2:5
**move** 26:11

**n**

**n** 2:1 3:1
**name** 4:3 7:12
  11:11 12:25
**named** 10:10
  22:5
**names** 12:22
**nancy** 13:5
**nature** 16:12
**nearly** 21:16
**necessarily**
  21:8
**necessary** 32:6
**need** 7:17,18
  11:25 16:22
  19:15 20:8
**neither** 29:10
  30:6
**new** 1:2,7,15,17
  2:10,12,14 4:9
  4:11,12,15
  5:15 7:14 8:2

[new - public]                                                                    Page 6

| | | | |
|---|---|---|---|
| 8:14 29:18 31:1 32:1 | 11:24 12:8,11 12:22 13:10 | **p.m.** 1:13 4:6 7:3,6 28:21,23 | **pli** 9:9 |
| **ninety** 12:7 | 14:21 16:18 | **page** 3:2,6 | **pllc** 2:4 |
| **notary** 4:13 29:17 32:13,19 | 18:2,12,19 19:17 20:4,11 | 10:22 11:2,4 11:20 31:4,7 | **plus** 25:19 27:13 |
| **noted** 32:7 | 20:14,19,20,25 | 31:10,13,16,19 | **population** 14:8 |
| **novo** 21:7,12 | 22:4,17,24 | **pages** 10:21 | **position** 12:11 |
| **nuanced** 27:14 | 23:14,19,23 | **parkway** 2:5 | **possible** 20:25 28:19 |
| **number** 13:2 | 24:7,11,22 | **part** 21:2,5 25:17 | **prepared** 30:3 |
| **ny** 1:17 2:6,14 | 25:8,11 26:3 26:22 27:21,23 | **parties** 4:15,19 29:11,13 30:7 | **primarily** 25:20 |

| | | | |
|---|---|---|---|
| **o** | 28:6,17 | 30:10 | **prior** 9:10 28:8 29:4 |
| **oaths** 4:14 | **once** 17:3,13 | **people** 12:20 | **probably** 16:11 |
| **objection** 4:17 | **operating** 19:13 | **percent** 12:7 | **problem** 6:25 |
| 5:19 13:23 | **opportunity** 15:16 | **perfect** 11:8 28:13,17 | **procedural** 4:24 |
| 14:24 15:19 16:8 18:4,14 | **organizations** 24:19 | **permitted** 4:23 | **proceeding** 1:14 4:5,22 |
| 21:13 22:6 23:2,9,23,24 | **original** 21:9 24:3,4,16 | **personal** 27:9 | 28:24 30:4 |
| 24:13 25:2,15 26:25 27:17 | 28:10 | **pile** 16:24 | **proceedings** 29:3,4,5,8 30:5 |
| **october** 9:17 | **outcome** 29:14 30:11 | **piles** 17:17 | **process** 16:20 |
| **offer** 24:24 | **outside** 21:23 | **place** 10:6 | 21:3,5,23 |
| **office** 2:4 8:10 | 22:21 23:17 | **plaintiff** 1:5 2:2 5:11 7:13 | 22:13,18 23:15 |
| 8:18 9:20 | **overall** 22:18 | 10:15 18:22 | 24:12 |
| 12:21 13:7 | **oversaw** 8:10 | **plaintiff's** | **processed** 8:24 |
| 17:10 | 8:23 | 10:14 18:21 | **produced** 4:21 |
| **officer** 29:1,2 | **oversight** 24:19 | **plan** 28:14 | **provide** 28:14 |
| **official** 9:21 | | **please** 5:7,9,13 | **providers** 9:8 |
| **oh** 19:13 20:19 | **p** | 5:21 7:17,19 | **public** 29:17 |
| **okay** 6:10 7:22 | **p** 2:1,1 | 10:22 11:4,20 | 32:19 |
| 7:24 8:8,12 | | 12:8 18:20 | |
| 9:16 10:9,12 | | 19:7 20:10 | |
| 10:24 11:10,19 | | | |

**put**  9:10 17:14 26:24 27:5

**q**

**qualified**  29:7
**questions**  7:15 17:24 27:22 28:2,5
**quite**  9:4

**r**

**r**  2:1 31:3,3
**raise**  5:21
**raised**  20:13
**reach**  17:23
**read**  32:5
**really**  14:9 15:22 20:4
**realm**  9:15
**reason**  27:3 31:6,9,12,15,18 31:21
**reasonable**  3:7 8:24 10:3 13:3 18:9
**recall**  15:3,10 15:21,25 18:18 22:14 23:16
**receive**  8:19 9:2 9:6 17:2 28:9
**received**  9:4,14 12:18 17:4,13
**record**  4:4,5,18 5:8 6:20 7:2,4 7:6 28:8,21

29:9 30:5
**recorded**  5:2 29:6
**recording**  4:21 29:8 30:3
**reduced**  29:6
**regards**  25:22
**related**  17:18 25:5 29:10 30:7
**relative**  29:12 30:9
**religions**  27:15
**religious**  12:14 25:13 26:17,20 26:23 27:4,8 27:11,15
**remember**  15:12
**remote**  1:14
**remotely**  4:16
**rephrase**  7:17
**reported**  1:18
**reporter**  4:2,3 5:12,17 6:8,13 6:24 7:5 10:17 10:20,24 11:5 11:7,23 12:6 18:24 19:4,9 19:11 20:7,11 26:9 27:23,25 28:6,13,17
**reports**  13:5

**represent**  7:13
**representing**  5:15
**request**  3:8,11 10:5,10 13:12 13:18 17:13 20:17 23:22 24:4 25:13
**requests**  8:25 10:4,8 12:13 12:19 15:9,24 16:21 17:2 19:24 21:22 22:2,14 24:24 25:5
**required**  32:13
**responsibilities**  8:22
**responsible**  14:7
**review**  12:13 12:16 21:24
**reviewed**  10:4 12:19,25 13:6 13:8 17:21 22:20 24:19 25:18
**reviewers**  22:20
**reviewing**  23:17
**right**  5:21 7:5,8 11:8 13:18 15:14 19:15,16

19:19 21:11 25:9,14 26:12 27:13,15
**rights**  9:12,13 9:22,24 12:12 23:12
**rockland**  8:6,7 8:9,11,18,22
**rozen**  22:24
**rules**  4:25

**s**

**s**  2:1 3:5 31:3
**school**  8:13
**screen**  6:14 19:14
**scroll**  11:3 19:14 20:12
**sdamera**  2:15
**second**  11:3
**see**  11:10,13 12:2,3,5,9 14:3 19:6 20:5,17 20:19 26:15,16 26:18 27:19
**sent**  17:8
**services**  24:10
**set**  17:12 21:22
**share**  6:14,18
**sheet**  18:8 20:21
**shivani**  2:11 5:14

| | | | |
|---|---|---|---|
| **show** 10:12 18:20 26:8 | **spreadsheets** 19:25 | **sure** 6:13 11:23 16:23 17:5 26:6,9 | **threat** 14:11,14 14:17 25:24 |
| **signature** 11:17 29:15 30:13 | **staff** 15:2 | **swear** 4:15 5:19 | **thursday** 1:12 4:10 |
| **signed** 13:15 | **stand** 23:8 24:8 | **sworn** 4:18 6:5 29:5 32:14 | **time** 1:13 5:6 6:19 7:16 9:18 |
| **sincerity** 26:23 | **standard** 28:11 28:12 | | 22:8 28:5 |
| **single** 17:21 | **standby** 10:18 28:19 | **t** | **tiny** 19:8,9 |
| **situated** 14:5 15:6 | **start** 5:8 | **t** 3:5 31:3,3 | **title** 9:13,21 |
| **sixth** 4:11 | **started** 24:23 | **take** 4:4,13 6:19 17:3 26:3 | **today's** 28:20 |
| **skills** 29:9 30:6 | **state** 29:18 | **taken** 4:8 18:9 29:3,11 30:8 | **tracking** 19:25 |
| **small** 12:4 | **states** 1:1 | **tell** 6:5 | **training** 8:19 8:20 9:2,5,7,11 |
| **smaller** 19:6 | **statutes** 9:14 | **terms** 11:24 | 9:15 24:25 25:6 |
| **snail** 17:9 | **stenographic** 5:3 | **testified** 6:7 | **transcriber** 30:1 |
| **someone's** 27:11 | **steps** 17:3 | **testifying** 29:5 | **transcript** 4:20 28:10 30:3,4 |
| **sorry** 7:11 19:13,13 26:11 | **steven** 1:18 4:3 11:19 18:19 | **testimony** 32:8 | 32:5,8 |
| **spaces** 14:9 16:14 | 26:7 29:2,16 | **testing** 16:6,11 16:15 | **transcriptionist** 29:7 |
| **speak** 15:17 | **stipulation** 5:5 | **thank** 5:12,17 6:8,15 7:8 | **true** 29:8 30:4 32:8 |
| **specialized** 8:19,20 | **street** 1:16 2:13 4:11 | 10:19 11:6 19:10,17 27:22 | **truth** 6:5,6,6 |
| **specific** 13:10 15:13 20:9 | **studied** 9:13 | 27:25 28:6,13 28:18 | **trying** 10:5 |
| 21:21 22:13 23:21 | **subject** 20:5,9 | **thing** 11:14 27:6 | **two** 6:11 10:23 10:24,25 |
| **specifically** 13:25 15:3,10 | **subscribed** 32:14 | **think** 16:22 17:19 18:16,25 | **type** 19:21 |
| **speculate** 7:21 | **subset** 14:10 | 21:15,21,24 22:11 24:15 | **typewriting** 29:6 |
| **spellings** 28:19 | **sufficient** 16:12 16:16 | | **typical** 9:25 |
| **spoke** 15:8,22 15:25 | **suite** 2:5 | | |
| | **supervisors** 17:16,23 | | |
| | **supporting** 17:22 | | |

**[under - zoom]**                                                          Page 9

| u | | | |
|---|---|---|---|

**u**

**under**  4:24
13:4 14:18
19:13

**understand**
4:19 7:17,20
7:22

**undue**  13:22
14:10,18 25:21
25:25

**uniquely**  14:5
15:5

**united**  1:1

**university**  8:14

**uses**  4:23

**usually**  21:19

| v |
|---|

**v**  1:6 7:14 31:1
32:1

**vaccinated**
14:13

**vaccination**
15:24

**vaccinations**
15:5

**vaccine**  17:18
21:21 25:5

**vaccines**  22:23

**vafegh**  1:11 4:1
4:8 5:1,21 6:1
6:3 7:1,12 8:1
9:1 10:1 11:1
11:10 12:1,3

13:1 14:1 15:1
16:1 17:1 18:1
19:1,19 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1,22 28:1
31:2,24 32:2,4
32:12

**various**  9:8
17:5

**vast**  12:19

**veritext**  4:4

**videoconfere...**
2:3,11

**view**  26:13

**vii**  9:13

**vs**  4:9

| w |
|---|

**want**  6:11,20
6:22 7:21
25:11 26:3
28:11

**way**  21:6

**ways**  17:6

**welcome**  11:7
27:24

**went**  15:5
17:11,17,19
21:19 22:21

**where'd**  8:13

**witness**  4:16,18
4:19 5:7,20 6:4
10:13 11:21

12:4,9 13:25
15:2,21 16:10
18:6,16,20
21:15 22:8
23:4,11 24:2
24:15 25:4,17
26:15 27:3,19
27:24 28:3
29:4

**work**  16:20,24
22:4,13,25

**worked**  10:3,5
13:4 17:15

**working**  9:18

**works**  21:6

**write**  17:24
18:7

**written**  5:4

**wrote**  11:14

**wylie**  30:2,14

| x |
|---|

**x**  3:1,5

| y |
|---|

**yeah**  6:22,25
11:16 13:16,25
14:4,12 15:15
15:25 16:10
17:11,17 18:6
18:25 19:11,12
20:14,14 23:11
26:14,16 27:16

**year**  8:15

**years**  21:17
25:19

**yep**  5:10,14
11:2

**york**  1:2,7,15
1:17 2:10,12
2:14 4:9,11,12
4:15 5:15 7:14
8:2,14 29:18
31:1 32:1

| z |
|---|

**zoom**  11:25
19:12 20:7

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.