UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIEL CHAVEZ,

          *Plaintiff,*

– against –

CITY OF NEW YORK,

          *Defendant.*

**MEMORANDUM & ORDER**
23-cv-07754 (NCM) (TAM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Daniel Chavez brings suit against his former employer, the City of New York ("City" or "defendant"), for failure to accommodate his religious beliefs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-17. *See generally* Compl., ECF No. 1. Defendant moves for summary judgment on plaintiff's claim.[1] For the reasons stated below, defendant's motion is **DENIED**.

## BACKGROUND

The following facts are undisputed unless otherwise noted.[2] Between August 2019 and February 2022, plaintiff was employed by the New York City Department of

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF No. 38, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, ECF No. 39, as the "Opposition"; and the Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF No. 40, as the "Reply."

[2] Facts not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

1

Correction ("DOC"). Def. 56.1 Statement of Material Facts ("Def. 56.1") ¶¶ 1, 76, ECF No. 38-1; Plaintiff's 56.1 Counterstatement of Material Facts ("Pl. 56.1") ¶¶ 1, 72, ECF No. 39-1.[3] Plaintiff held two positions at the DOC. From the start of his employment until May 2020, he served as the Executive Director for Instructional Design and Enrollment Management, where he was responsible for the design and development of the curriculum for uniformed and non-uniformed staff among other duties. Def. 56.1 ¶¶ 2–3; Pl. 56.1 ¶¶ 2–3.

He then worked as the Assistant Commissioner for Training and Development until February 2022 and was responsible for creating and implementing training for numerous uniformed and non-uniformed DOC staff and for enrollment management, which entailed tracking the enrollment of corrections staff in trainings. Def. 56.1 ¶¶ 9–10; Pl. 56.1 ¶¶ 9–10. Throughout the entirety of his employment with the DOC, plaintiff's office was located at the Correction Academy in Queens, New York and in the GMDC Learning Building on Rikers Island. Def. 56.1 ¶¶ 4, 11; Pl. 56.1 ¶¶ 4, 11.

As the Executive Director, plaintiff worked primarily in-person and sometimes remotely, approximately once per month. Opp'n Ex. 7 ("Chavez Tr.") 24:15–25:12, ECF

---

[3] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit "a separate . . . statement, in number paragraphs, of material facts" as to which there is no genuine issue to be tried." Local R. 56.1(a). A party opposing summary judgment must submit "a correspondingly numbered paragraph . . . responding to, each numbered paragraph in the statement of the moving party." Local R. 56.1(b). Here, defendant's 56.1 statement of facts contains 76 paragraphs, *see* Def. 56.1 at 12, and plaintiff's counterstatement of facts contains 72 paragraphs, *see* Pl. 56.1 at 10. While some of plaintiff's numbered paragraphs correctly correspond to defendant's statement, many are not synchronized. The Court uses its best judgment to identify corresponding statements and counterstatements of facts throughout this Order, and "summarizes the facts as they appear through the parties' briefing and the record as a whole." *Gourley v. Yarmack*, No. 21-cv-01163, 2023 WL 5625439, at *1 (E.D.N.Y. Aug. 31, 2023).

2

No. 39-8. His role entailed interacting with other DOC staff but not with people in custody. Def. 56.1 ¶ 8; Chavez Tr. 25:13–17. At the onset of the COVID-19 pandemic, plaintiff worked remotely from March 2020 through the end of April 2020. Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6. At the end of April 2020, plaintiff returned to work in-person. Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7. In plaintiff's role as Assistant Commissioner, he interacted with people in custody, though not frequently. Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12. His interactions with DOC staff were both in-person and remote. Def. 56.1 ¶ 13; *see* Pl. 56.1 ¶ 13.

City employees, including DOC employees—uniformed and nonuniformed—and contractors were ordered to comply with the vaccine mandate and receive the COVID-19 vaccine starting on October 20, 2021. Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15. The vaccine mandate required most City employees, including non-uniformed DOC employees like plaintiff, to provide proof by October 29, 2021 at 5:00 p.m. that they received a single dose vaccine or the first dose of a two-dose vaccine. Damera Decl. Ex. B ("Vaccination Order") at 3, ECF No. 38-4.[4] The vaccine mandate required City employees who did not provide the requisite proof of vaccination to be excluded from their assigned work location and placed on leave without pay starting on November 1, 2021. Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24.

DOC employees who wished to be exempt from the mandate were required to apply for a reasonable accommodation with the DOC Office of Equal Employment Opportunity ("EEO"). *See* Damera Decl. Ex. C ("FAQs") at 8, ECF No. 38-5. On October 27, 2021, plaintiff submitted a reasonable accommodation request to be exempt from the vaccine mandate on the basis of religion. Opp'n Ex. 6 (Request for Reasonable Accommodation ("RA Request")) 1–2, ECF No. 39-7. Plaintiff requested to continue working in person and

---

[4] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers

submit to weekly testing. RA Request 1–2. "Submission of a weekly negative test result" was "the only allowable accommodation from vaccination without causing an undue hardship and/or disruption" to the DOC. *See* FAQs 9.

Approximately three weeks later, the DOC denied plaintiff's RA Request. Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55; *see* Damera Decl. Ex. G ("RA Denial") at 2, ECF No. 38-9. The RA Denial stated that allowing plaintiff to work while unvaccinated would pose an undue hardship because DOC was charged with ensuring the health and safety of those in its care and custody as well as maintaining safe working conditions for employees. Def. 56.1 ¶¶ 56–61; Pl. 56.1 ¶¶ 54–56, 59; *see* RA Denial 2. The DOC could not require incarcerated individuals to receive the vaccine, and the frequency of an employee's contacts with the incarcerated population was considered in determining undue hardship. Def. 56.1 ¶ 62; Pl. 56.1 ¶ 62.

On November 18, 2021, plaintiff appealed the RA Denial to a Citywide Appeals Panel ("Citywide Panel") who considered appeals filed by employees whose accommodation requests were denied by their respective agency. Def. 56.1 ¶¶ 33, 63; Pl. 56.1 ¶ 59. Plaintiff included a letter of support by the DOC Chaplain Justin von Bujdoss with his appeal. Def. 56.1 ¶ 64; Pl. 56.1 ¶ 61. Chaplain von Bujdoss wrote that plaintiff's "beliefs have a historical precedent with respect to the belief that free will and the exercise of free will is a divinely apportioned, unique characteristic of being in relationship with god." Damera Decl. Ex. H ("Appeal File") at 7, ECF No. 38-10. He further wrote that, "[a]ccording to this theological perspective the God-given ability to reason and discern what is appropriate with respect to liberty and individual agency is a central tenet to what it means to be a human participant in a divinely created world." Chaplain von Bujdoss

4

Letter 7. The Citywide Panel reviewed plaintiff's documentation and denied plaintiff's appeal. Def. 56.1 ¶ 67; *see* Pl. 56.1 ¶ 41; Appeal File 13.

On January 31, 2022, plaintiff was informed that he was required to submit proof of COVID-19 vaccination no later than February 11, 2022 otherwise he would be separated from City service. Def. 56.1 ¶ 75; Pl. 56.1 ¶ 71. On February 11, 2022, plaintiff failed to submit proof of vaccination and was terminated as a result. Def. 56.1 ¶ 76; *see* Pl. 56.1 ¶ 72.

## LEGAL STANDARD

The standard for summary judgment is well settled. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets their initial burden, the non-moving party must provide evidence establishing a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). The Court is to draw all justifiable inferences from the evidence in the non-movant's favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

The Court need only consider admissible evidence, and it need not leave every evidentiary stone unturned. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y.

2021). "The rules governing the admissibility of evidence on a summary judgment motion are the same as those governing admissibility at trial, and the district court has broad discretion in choosing whether to admit evidence." *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 569 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part,* 594 F. App'x 723 (2d Cir. 2014).

## DISCUSSION

It is "an unlawful employment practice under Title VII [of the Civil Rights Act of 1964] for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of [its] employees[.]" *Zacharowicz v. Nassau Health Care Corp.*, 177 F. App'x 152, 153 (2d Cir. 2006) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).[5] To succeed on a religious discrimination claim for failure to accommodate, "a plaintiff must first establish a prima facie case by showing that (1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer of this belief; and (3) [he] was disciplined for failure to comply with the conflicting employment requirement." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185–86 (2d Cir. 2025) (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

After a plaintiff has established a prima facie case, the employer "is required to show that it offered [him] a reasonable accommodation or that doing so would cause undue hardship." *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 WL 7059182, at *3 (S.D.N.Y. Oct. 12, 2022) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)).

---

[5] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

6

Plaintiff claims that defendant violated Title VII by denying him a religious accommodation that would have exempted him from the COVID-19 vaccine mandate. Defendant moves for summary judgment on this claim. Defendant argues that it is entitled to summary judgment because (1) plaintiff's RA Request did not demonstrate that he had a sincerely held religious belief that entitled him to a vaccine exemption, and (2) granting plaintiff his requested exemption would have imposed an undue hardship on the DOC. Mot. 7. Defendant has failed to provide evidence to establish that a reasonable jury could not find for plaintiff as to both arguments.

A. *Sincerity and Religious Nature*

Defendant argues that plaintiff cannot prevail on his failure to accommodate claim because he has not offered evidence that would allow a reasonable juror to conclude that plaintiff's alleged religious beliefs are sincere, nor has plaintiff offered evidence that he advised his employer that his alleged religious beliefs conflicted with the vaccine mandate. Mot. 10.

A plaintiff bringing a Title VII failure to accommodate religious beliefs claim must establish that the beliefs at issue are sincerely held and religious. *Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 319 (S.D.N.Y. 2024). The "sincerity analysis seeks to determine an adherent's good faith in the expression of h[is] religious beliefs." *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51, 63 (2d Cir. 2025) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). Title VII defines religion as "includ[ing] all aspects of religious observance and practice, as well as belief." *Matos*, 750 F. Supp. 3d at 318. The "core purpose of this analysis is to differentiate between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Gardner-Alfred*, 143 F.4th at 63 (quoting *Patrick*, 745 F.2d at 157).

7

Defendant argues that the Citywide Panel rightfully concluded that plaintiff's choice to refuse the COVID-19 vaccine was unrelated to sincerely held religious beliefs and instead based on a personal preference to not take the vaccine. Def. 56.1 ¶¶ 47, 67–68; Mot. 11. Defendant adds that the materials plaintiff submitted in support of his RA Request and the record writ large establish that plaintiff's beliefs were arguably philosophical or personal—nonreligious but "cloaked in religious garb". Def. 56.1 ¶¶ 47, 68; Mot. 12–13. Defendant also claims that plaintiff's religious beliefs are insincere because he acted inconsistently with those beliefs when he received vaccinations while serving in the United States Army. Def. 56.1 ¶ 73; Mot. 12.

In response, plaintiff argues that his "beliefs are safeguarded as long has [he] conceives of his beliefs as religious in nature." Opp'n 8. Plaintiff's RA Request stated: "[a]s a Christian, free will and choice . . . are fundamental to who I am as a person, and what constitutes the purpose of my life and existence. . . . I must account to God for my actions and choices, and to do so I must have made my own choices, so that I may account for them." RA Request 2. Plaintiff explains that he believes "God created [him] with the ability to endure infectious diseases by providing [him] with a natural immune system." RA Request 2. Additionally, while plaintiff concedes that he was vaccinated when serving in the Army, he notes that he received those vaccinations in 1997 when he joined and denies receiving any other vaccines in the last "ten to fifteen years". Opp'n 11. Finally, plaintiff argues that the determination of the sincerity of his religious beliefs is almost entirely a credibility assessment inappropriate for adjudication at summary judgment. Pl. 56.1 ¶ 45; Opp'n 8. The Court agrees.

Defendant has failed to establish that there is no genuine dispute as to whether plaintiff's religious beliefs are sincere. Plaintiff's own statements constitute evidence of

8

what his religious beliefs are, that his beliefs conflict with getting the vaccine, and that he has not received any vaccination for the last ten to fifteen years; plaintiff's consultation with Chaplain von Bujdoss concerning his religious beliefs prior to submitting his RA Request constitutes further evidence, too. *See* Opp'n 10–12; Chavez Tr. 64:15–21. Plaintiff has therefore offered evidence that, if believed, could be a basis by which a juror could find in favor of the nonmovant.

Defendant relies mainly on plaintiff's previous vaccinations to establish that plaintiff's religious beliefs are insincere. While evidence that plaintiff has previously received vaccinations is certainly relevant to evaluating the sincerity of plaintiff's beliefs, this evidence does not preclude a jury from nonetheless crediting plaintiff's testimony about his religious beliefs. *See Gardner-Alfred*, 143 F.4th at 63. This is especially so given that plaintiff alleges he last received vaccinations at least 10 years ago. *See* Chavez Tr. 68:5–70:2. Defendant's "evidence of [plaintiff's] potentially inconsistent behavior is, at best, impeachment evidence that a jury could rely on to discredit [plaintiff's] testimony, but it is not, in and of itself, sufficient to support a grant of summary judgment, because at this stage of the proceedings, the court may not make credibility determinations or weigh the evidence." *Gardner-Alfred*, 143 F.4th at 64 (quoting *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227 (2d Cir. 2024)). In *Gardner-Alfred*, the defendant presented evidence of plaintiff's inconsistencies to argue that plaintiff's objection to the COVID-19 vaccine was secular not religious. *Id.* at 63. However, the Court held that even if plaintiff had secular objections to the vaccine, a reasonably jury could also find that plaintiff had sincere religious beliefs that conflicted with the vaccine requirement. *Id.* at 63–64. Thus, a factfinder could determine that either plaintiff was fraudulent in her beliefs, or that she possessed religious and secular objections to the vaccine. *Id.* Similarly here, evidence that

9

plaintiff acted inconsistently with his religious beliefs at least 10 years ago is not a sufficient basis to resolve plaintiff's sincerity as a matter of law, especially given plaintiff's more recent statements of his beliefs and the letter of support from Chaplain von Bujdoss. *See* Chavez Tr. 65:14–66:15 (discussing weekly conversations with Chaplain von Bujdoss).

Defendant also points to Chaplain von Bujdoss's letter, which stated plaintiff's beliefs "have a historical precedent" and are a "theological perspective." Def. 56.1 ¶¶ 64–66. Defendant argues that plaintiff's beliefs are not religious but instead a personal preference. Reply 8. However, "theological" means "of or relating to theology"—itself meaning "the study of religious faith, practice, and experience." *Theology*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/theology (last visited Feb. 3, 2026). A reasonable jury could understand Chaplain von Bujdoss's statements that plaintiff's beliefs are theological and in line with historical precedent to support the conclusion that plaintiff's beliefs are religious and sincerely held.

Further, contrary to defendant's argument, plaintiff has presented evidence that he informed his employer of how his religious beliefs conflicted with the vaccine mandate. *See* RA Request 2. In his RA Request, plaintiff explains that consistent with his beliefs as a Christian, God has given him the "ability to fight infectious diseases by providing [him] with a natural immune system." RA Request 2. Plaintiff explains that being injected with the vaccine, which is "not something then that can be taken out . . . is not walking in faith" or rather inconsistent with his religious beliefs. Chavez Tr. 49:23–50:4. Drawing all permissible inferences in plaintiff's favor, his objection can easily be construed to include putting a vaccine into his body (which he believes is already able to fight infectious diseases). *See DeMaria v. N.Y.S. Unified Ct. Sys.*, No. 23-cv-03627, 2025 WL 2298452, at *8 (S.D.N.Y. Aug. 8, 2025) (finding that "the assembled evidence would permit a

10

reasonable juror to find for [plaintiff]"—evidence such as plaintiff's statements "that his faith directs all of his choices and actions and who he is" and that "to receive a COVID-19 vaccine would be to sin").

Based on the evidence before the Court, a reasonable jury could find that, even if plaintiff had some nonreligious objection to the vaccine, he nevertheless also had religious objections to the vaccine and his religious beliefs conflicted with the vaccine mandate.

B. *Undue Hardship*

Defendant next argues that the Court should grant summary judgment because plaintiff's requested accommodation would have imposed an undue hardship on the DOC's operations. Mot. 14. Defendant contends that allowing plaintiff to remain unvaccinated would have posed a health and safety risk to other DOC employees and those in the DOC's custody. *See* Def. 56.1 ¶¶ 56, 59–60; Mot. 14–15. Defendant also argues that it has no obligation to engage in an interactive process with plaintiff because any accommodation would have posed an undue hardship. Mot. 19–21. In response, plaintiff argues that his requested accommodation—weekly COVID-19 testing—would not have imposed an undue hardship on defendant's operations and an interactive process was necessary. Opp'n 3.

The question properly before the Court at this stage is whether a reasonable jury could find that providing plaintiff an accommodation that exempted him from the vaccine mandate would have imposed an undue hardship on defendant's operations. "Undue hardship" is not an element of a plaintiff's Title VII claim, rather it is a defense. *Brandon v. Bd. of Educ. Of City of St. Louis*, No. 22-cv-00635, 2025 WL 1360684, at *32 (E.D. Mo. May 8, 2025) (first citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 n.2 (2015); and then citing *Groff v. DeJoy*, 600 U.S. 447, 472 (2023)). It is the employer

11

who must demonstrate undue hardship by showing that the burden of accommodation is substantial in the overall conduct of their operations. *Groff*, 600 U.S. at 472. "Title VII requires an assessment of a possible accommodation's effect on the conduct of the employer's business." *Id.* Here, defendant has not established as a matter of law that accommodating plaintiff will pose an undue hardship.

The undue hardship analysis is context specific, and the Court must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact," *id.* at 470, "in light of the nature, size and operating cost of an employer," *Beckles v. N.Y.C. Dep't of Educ.*, No. 23-cv-8663, 2025 WL 2208418, at *2 (E.D.N.Y. Aug. 4, 2025) (quoting *Beickert v. N.Y.C. Dep't of Educ.*, No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y. Sept. 25, 2023)), and the nature of the employee's job and specific duties, *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F.Supp.3d 208, 220–21 (N.D.N.Y. 2024).

The rapid spread of COVID-19 in correctional facilities and the ensuing harm to correctional staff and incarcerated individuals is not doubted by the Court. *See People ex rel. Stoughton v. Brann*, 67 Misc. 3d 629, 122 N.Y.S.3d 866 (N.Y. Sup. Ct. 2020). However, defendant does not offer any evidence why plaintiff's requested accommodation, weekly COVID-19 testing, poses a substantial burden in the conduct of defendant's operations. At bottom, defendant relies on general assertions of health and safety risk to DOC employees and individuals who are incarcerated. This is not adequate to meet its burden. Defendant provides no evidence of plaintiff's job responsibilities that mandate in-person interaction with the incarcerated population and DOC staff, or explain that plaintiff's job responsibilities could not be fulfilled remotely. Indeed, plaintiff states that his interactions with those in DOC custody is limited, Pl. 56.1 ¶ 12, and that some of

12

his work is done remotely, Pl. 56.1 ¶ 5. Plaintiff also states that he had meetings and provided trainings via Zoom. Chavez Tr. 30:5–14, 31:2–8. Moreover, even if plaintiff's job responsibilities require him to work in person, defendant has not stated why, given the nature and frequency of plaintiff's interactions with uniformed and non-uniformed staff and the approximate number of staff plaintiff regularly meets with in-person, weekly testing would have been insufficient or lead to substantial costs. *See, e.g.*, *Peterson v. Snohomish Reg'l Fire and Rescue*, 150 F.4th 1211 (9th Cir. 2025) (finding undue hardship to accommodate vaccine exemptions due to health and safety costs if fire department employees were unvaccinated where fire chief's declaration cited fire department employees responded to 18,000 emergency calls, 85% of which were for medical services, and transported nearly 7,000 people to hospitals); *see also Lake*, 738 F. Supp. 3d at 213, 220 (holding plaintiff's religious accommodation request would have caused undue hardship because as an x-ray technician, plaintiff's job at the hospital was intrinsically "patient facing"); *cf. Beckles*, 2025 WL 2208418, at *3 (holding that because "[a] reasonable accommodation can never involve the elimination of an essential function of a job," a special education teacher's request to work remotely was not reasonable given that her students required hands-on instruction).

To sustain its burden of establishing an undue hardship defense, defendant is required to provide evidence of the health and safety costs it would incur by accommodating plaintiff. For example, in *Peterson*, the defendants explained that exposing fire department staff to the virus would burden its operations because firefighters would go on sick leave, and the department would have limited staff to assign to work shifts. *Peterson*, 150 F.4th at 1220–21. Here, defendant does not present evidence concerning staffing costs, such as increased absences or staff shortages related to COVID-

13

19 outbreaks. Nor does defendant present evidence showing how accommodating someone with plaintiff's specific job responsibilities would compound and exacerbate those costs.

The argument that the DOC cannot have unvaccinated people come into contact with "uniformed Members of Service assigned to non-jail Commands [because they] are regularly redeployed to the jails to cover staffing shortages" does not change the Court's conclusion. RA Denial 2. Undoubtedly, safety within any work environment "is of absolute importance," and must inform the analysis under *Groff*. *See Beickert*, 2023 WL 6214236, at *5; *see also Chavez v. S.F. Bay Area Rapid Transit Dist.*, 723 F. Supp. 3d 805, 821 (N.D. Cal. 2024) ("Several post-*Groff* decisions have held that an employer can establish undue hardship by showing that accommodation posed a health and safety risk to other employees[.]"). Defendant's safety concerns are particularly weighty given its obligation to ensure the safety of its incarcerated population. Nevertheless, defendant has not carried its burden of demonstrating that plaintiff's RA Request would have created an undue hardship as a matter of law. Even if the Court were to accept defendant's conclusory concern of staffing shortages, "adverse impact on other employees, standing alone, does not satisfy the undue burden test." *Groff*, 600 U.S. at 472 ("So an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business, but a court cannot stop its analysis without examining whether that further logical step is shown in a particular case."). More to the point, defendant does not present evidence that plaintiff's unvaccinated status would require other employees to assume his essential duties involving close contact with the incarcerated population or coworkers to mitigate infection risks, nor does defendant offer evidence of a substantial increase in economic costs through lost staff hours, increased overtime, or a

14

redistribution of responsibilities. Moreover, defendant's reliance on general assertions of the risks of COVID-19 and the efficacy of the COVID-19 vaccine does not amount to the specific evidence needed to demonstrate undue hardship.[6]

Defendant also cannot point to an interactive process (whereby defendant and plaintiff met to discuss alternative accommodations) in order to establish that defendant engaged in a context-specific assessment. Though no such interactive process is necessary, had defendant nevertheless engaged in one, such conduct could have bolstered defendant's argument that it engaged in the type of specialized, context-specific assessment courts require. *See e.g.*, *Russo*, 129 F.4th at 184 (highlighting that school

---

[6] To bolster its argument that granting plaintiff's RA Request would pose health and safety risks, defendant points to the fact that the risks of COVID-19 have been recognized by courts throughout the Second Circuit. Mot. 14–17. However, courts in this circuit have acknowledged the risks of COVID-19 specifically when discussing the essential job responsibilities of employee seeking accommodations and the unique features of each employee's work environment. *See, e.g.*, *Lake*, 738 F. Supp. 3d 208 (holding that hospital would incur financial and operational burdens on its business because it could not feasibly prevent plaintiff, who was often the only x-ray technician working night shifts, from coming into contact with and potentially exposing patients and other employees). Defendant also relies on CDC recommendations and the Second Circuit's acknowledgement of those recommendations to argue for the vaccine's efficacy in preventing COVID-19. Mot. 18–19. But general assertions about the vaccine's efficacy does not "demonstrate [defendant's] contemporaneous rationale for denying [plaintiff's] religious accommodation request[.]" *Byam v. N.Y.C. Dep't of Educ.*, No. 23-cv-03999, 2024 WL 4198475, at *4 (E.D.N.Y. Sep. 16, 2024) *reconsideration denied*, 2024 WL 4504712 (E.D.N.Y. Oct. 16, 2024) (rejecting defendant's argument based on citations to CDC materials outside the record and contrasting defendant's unsuccessful argument with a successful argument in a different case based on "abundant, unrefuted evidence of COVID-19's effect on [a hospital system's] patients, employees, and ability to fulfill its mission"); *cf. Buchanan v. Mass. Dep't of Corr.*, No. 23-cv-10192-FDS, 2024 WL 5202787, at *5 (D. Mass., Dec. 23, 2024) (finding undue burden when, among other things, defendant "required staff members to isolate medically if exposed to [COVID-19]" and defendant's evidence of staffing shortages due to these "mandatory isolation periods").

district met with plaintiff twice to discuss a potential exemption); *Hall v. Sheppard Pratt Health Sys., Inc.*, 155 F.4th 747 (4th Cir. 2025) (emphasizing employer-employee meeting during which employer discussed potential alternative accommodations with employee). This is particularly relevant here where it is unclear from the evidence in the record that defendant engaged in an individualized assessment of plaintiff's RA Request. Defendant thoroughly explains the reasonable accommodation review process, Def. 56.1 ¶¶ 27–50, yet defendant fails to provide how the evaluation standards were applied to plaintiff's RA Request specifically.

The Court does not opine on the efficacy of the COVID-19 vaccine or the wisdom of the vaccine mandate. The question is whether defendant could offer an accommodation to plaintiff without substantially increasing defendant's costs. Despite defendant's burden of establishing that there is no genuine dispute of fact as to this question, defendant has not presented sufficient evidence. More than barebone arguments are necessary at this stage. *See Borowski v. Mordino*, No. 16-cv-00999, 2020 WL 6083425, at *1 (W.D.N.Y. Oct. 15, 2020) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . and put flesh on its bones." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). Defendant fails to meet its burden here.

16

## CONCLUSION

For the reasons stated above, defendant's summary judgment motion is DENIED. In accordance with the Court's Individual Practice Rule IV.A, the parties shall file a proposed joint pretrial order by March 6, 2026.

**SO ORDERED.**

                                                                     /s/ *Natasha C. Merle*
                                                            NATASHA C. MERLE
                                                            United States District Judge

Dated:        February 6, 2026
                Brooklyn, New York